Linda T. Peterson, Plaintiff-Appellant,

v.

Cornerstone Property Development, LLC,
Defendant-Respondent.

Court of Appeals

*No. 2004AP3358. Oral argument May 23, 2006.
—Decided June 13, 2006.*

2006 WI App 132

(Also reported in 720 N.W.2d 716.)

804

I

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jordan B. Reich of Kohner, Mann & Kailas, S.C.*, of Milwaukee, with oral argument by *Jordan B. Reich*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Nathaniel Cade, Jr.*, of *Michael Best & Friedrich, LLP*, of Milwaukee, with oral argument by *Nathaniel Cade Jr*.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J. Linda T. Peterson appeals from a judgment, awarding her $3,388.50 in damages for breach of contract, and awarding Cornerstone Property Development LLC (Cornerstone) $3,594.93 in costs, in a suit involving Peterson's purchase of an unfinished condominium unit from Cornerstone. On appeal, Peterson raises two issues: (1) the trial court's grant of partial summary judgment to Cornerstone, following the court's grant of Cornerstone's motion to reconsider, dismissing her claim based on a violation of WIS. STAT. § 100.18(1) (2003–04);[2] and (2) the trial court's grant of Cornerstone's motion in limine to exclude evidence of consequential damages with respect to her breach of contract claim.

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 2. Peterson asserts that the trial court erred in granting Cornerstone's motion to reconsider, arguing that her Wis. Stat. § 100.18(1) claim is not barred by the economic loss doctrine or the contract's integration clause. Peterson also contends that the trial court erred in granting Cornerstone's motion in limine to exclude evidence of consequential damages, arguing that although she agreed to purchase her condominium "as is," more specific provisions of the contract conflict with the "as is" provision and must be given effect, making consequential damages recoverable for breach of a more specific provision.

¶ 3. We conclude that the integration clause bars Peterson from pursuing a claim under Wis. Stat. § 100.18(1), and that the contract's "as is" clause is limited by the contract's Limited Warranty which, if breached, does permit Peterson to pursue a claim for consequential damages. Accordingly, the judgment is affirmed with respect to the Wis. Stat. § 100.18(1) claim, and reversed in part with respect to consequential damages.

## I. BACKGROUND.

¶ 4. In August 2000, Peterson entered into a reservation agreement with Cornerstone, paying $2,000 for the right to make the first offer for the purchase of a luxury condominium located at 1801 North Commerce Street in Milwaukee. In April 2001, Peterson made an offer to purchase the condominium unit for $292,199.89, and in May, Cornerstone made a counter-offer which Peterson accepted. The closing took place on May 18, 2001. The counter-offer, consisting of multiple documents, together with Peterson's offer, became the purchase contract between Peterson and Cornerstone.

¶ 5. Peterson agreed to purchase the condominium at a reduced price "in an 'as is' condition." She agreed to complete the construction herself, and she knew that a certificate of occupancy would not be issued until the construction was complete. Prior to the closing, Peterson was given the opportunity to inspect the property.

¶ 6. Exhibit E contained a "Limited Warranty," promising that for one year the unit would be free from "latent defects due to faulty materials or workmanship," that is, defects not apparent at the time of the closing or completion of the work, but that become apparent before the expiration of the warranty. If such latent defects were discovered, Cornerstone would have the choice to either make the repairs or replace the defective item. With the exception of the Limited Warranty, Peterson specifically agreed to "waive[] any claim against the Seller for patent or latent defects in construction of the Property."

¶ 7. The contract included an integration clause, expressed in three separate provisions, excluding all prior negotiations from the contract and specifying that only the text contained in the written documents constituted the actual contract. First, in what was originally part of Peterson's offer, the contract provided: "**ENTIRE CONTRACT** This Offer, including any amendments to it, contains the entire agreement of the Buyer and Seller regarding the transaction. All prior negotiations and discussions have been merged into this Offer." Next, Exhibit D, which was part of Cornerstone's counter-offer, provides: "Seller has made no representations other than written in this offer and attached documents concerning the property." Finally, Exhibit F contained the following language:

> The Buyer acknowledges, subject to the Limited Warranty contained in Exhibit E . . ., that, to the fullest extent permitted by law, . . . (c) other than those written representations concerning the condition of the Property contained in the Condominium Offer to purchase, including the Exhibits annexed thereto, she has not relied on any representations made by the Seller in entering into the Condominium Offer to Purchase . . . .

¶ 8. In addition, Revised Exhibit A provided a list of tasks which Cornerstone agreed to fulfill prior to or at the closing, including completing certain unfinished tasks, making certain repairs, and supplying certain materials. Peterson and Cornerstone agreed that should Cornerstone fail to fulfill those obligations, Peterson would receive 150% of the cost of the work and materials. Cornerstone failed to provide the work and materials, and at the closing, the parties agreed that the value of the materials and work that Cornerstone had failed to provide was $2,259.00. Cornerstone made an offer for 150% of $2,259.00, amounting to a total of $3,388.50. Peterson rejected the offer.

¶ 9. According to Peterson, Cornerstone made certain representations to her to induce her to purchase the unit, on which she relied in making her decision to buy it, including: that the property was fit for its intended purpose, well constructed, and, upon completion, ready for occupancy. According to Peterson, the unit did not meet these criteria, and was instead "poorly designed and constructed," and caused her to be unable to complete the required construction. Having failed to complete the construction, Peterson was unable to obtain a certificate of occupancy, and was therefore unable to move into the condominium.

¶ 10. On April 26, 2002, Peterson filed suit against Cornerstone,[3] alleging five different causes of action. Her complaint alleged breach of contract for Cornerstone's failure to provide a unit that was "well constructed, fit for its intended purpose and, except for final completion, ready for occupancy," and for failure to provide the materials and make the repairs as agreed, prior to or at the closing. As a result of the alleged breaches, Peterson claimed she had "sustained damages, including consequential damages, in an amount to be determined." Peterson's complaint also alleged claims of negligent, intentional and strict responsibility misrepresentation. Lastly, she also claimed that Cornerstone had engaged in false advertising by making representations and omissions that were "untrue, deceptive or misleading," in violation of WIS. STAT. § 100.18(1).

¶ 11. Cornerstone filed an answer denying the allegations and asserting a number of affirmative defenses, including that: (1) Peterson's complaint had failed to state a claim upon which relief may be granted; (2) Peterson had failed to mitigate damages; (3) Peterson's misrepresentation and WIS. STAT. § 100.18(1) claims were barred by the economic loss doctrine; and (4) Peterson's claims were barred by her own breach of contract because she accepted the condominium "as is," subject only to the Limited Warranty and the delivery of certain materials and work, yet she refused to accept Cornerstone's offer for the materials and work, in the amount agreed to in the contract.

---

[3] Peterson's suit also initially included a claim against Timothy Dixon, the Cornerstone representative who handled the sale of the condominium; however, the parties subsequently stipulated to the voluntary dismissal of that claim without prejudice.

¶ 12. Following extensive discovery, Cornerstone moved for summary judgment, arguing that: (1) the integration clause bars Peterson's claims of misrepresentation; (2) the economic loss doctrine bars all claims for misrepresentation; (3) Peterson's remedies under the contract are limited to those provided by the Limited Warranty and the value of the unsupplied materials agreed to at the closing; and (4) Cornerstone did not violate WIS. STAT. § 100.18(1) because Peterson must demonstrate an "untrue, deceptive or misleading" advertisement or announcement and Cornerstone did not make any such statements.

¶ 13. Peterson filed a response, arguing that: (1) a genuine issue of material fact existed; (2) the economic loss doctrine does not bar all claims of misrepresentation because it does not apply to intentional or strict responsibility misrepresentation; (3) the integration clause does not bar claims of misrepresentation; (4) her contract remedies are not limited to the Limited Warranty; and (5) pre-contract representations are actionable under WIS. STAT. § 100.18(1) and the economic loss doctrine does not apply to § 100.18(1) actions.

¶ 14. On March 31, 2003, the trial court denied Cornerstone's motion for summary judgment. The court was not convinced that the economic loss doctrine barred intentional misrepresentation or strict responsibility claims, and ruled that Peterson was not limited to her breach of contract claim. The court noted that summary judgment was also not appropriate because "integration clauses which negate the existence of any representation not incorporated into the contract may not be used to escape liability for misrepresentations."

¶ 15. On June 3, 2003, the supreme court issued its decision in *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, 262 Wis. 2d 32, 662 N.W.2d 652. Soon thereafter, Cornerstone filed a motion to reconsider the court's

denial of its motion for summary judgment, maintaining that because *Digicorp* recognized that a fraud in the inducement exception to the economic loss doctrine applies only when the "fraud is extraneous to, rather than interwoven with, the contract," 262 Wis. 2d 32, ¶ 47, and because here the alleged misrepresentation is interwoven with the contract, Peterson's intentional misrepresentation claim is barred by the economic loss doctrine. Cornerstone also argued that the court had misapplied the law in concluding that the integration clause did not bar non-contract claims and maintained that it bars false advertising claims under Wis. Stat. § 100.18(1).

¶ 16. Peterson filed a response, arguing that her situation falls under the fraud in the inducement exception outlined in *Digicorp* because before she entered into the contract, "certain representations were made that were and are not addressed in the contract." She also asserted that Cornerstone misreads the law because integration clauses may not be used to escape liability under Wis. Stat. § 100.18(1).

¶ 17. On October 7, 2003, the court issued a written decision and order granting Cornerstone's motion to reconsider. The court concluded that Peterson's intentional misrepresentation claim was barred by the economic loss doctrine as explained in *Digicorp*, and that her Wis. Stat. § 100.18 claim was barred by the integration clause, granting Cornerstone summary judgment as to those claims. The court explained that Peterson could still pursue a breach of contract claim.

¶ 18. Meanwhile, Cornerstone had also filed a motion in limine to exclude evidence of consequential damages with respect to the breach of contract claim because Peterson purchased her condominium "as is" and had agreed that the total amount of damages for

failure to supply the required materials and work was $3,388.50. Cornerstone submitted that the court should limit Peterson's contractual damages to $3,388.50 because her inability to gain occupancy of her condominium was due to her own inaction, not Cornerstone's action, and because she has failed to adequately itemize the alleged damages.

¶ 19. Peterson responded by arguing that consequential damages are available, irrespective of the "as is" clause, both for the cost to complete the condominium and as damages for her inability to use it,[4] because the contract is ambiguous. In a supplemental brief, Peterson referred to the tasks, repairs and materials listed in Revised Exhibit A and the Limited Warranty promising that the unit would be free of latent defects and claimed that Cornerstone had failed to meet those obligations, amounting to a breach, that entitles her to recover consequential damages.

¶ 20. Cornerstone filed a supplemental brief in support of its motion in limine, reiterating its position that Peterson is owed only $3,388.50 and that consequential damages for the cost to complete the unit or for her inability to use her condominium are barred by

---

[4] Peterson originally sought consequential damages for eleven separate areas; however, her Pretrial Report and a hearing on May 18, 2004, reduced the damages that she sought, to the following eight areas: (1) mortgage payments of $1,670.00 per month since September 2001; (2) condominium dues since September 2001; (3) real estate taxes since September 2001; (4) storage fees since August 2001; (5) $28,432.28 for undelivered materials; (6) square footage adjustment due to Peterson's misunderstanding as to the size of the unit; (7) $33,373.00 to complete the unit; and (8) Peterson's share of any assessment to repair common elements. Whether this is an accurate list of the consequential damages that Peterson is still seeking is unclear because her briefs do not address the issue.

Peterson's failure to mitigate damages, the "as is" clause, and other provisions of the contract that expressly preclude such claims.

¶ 21. On July 21, 2004, the court issued a decision and order granting Cornerstone's motion in limine to exclude evidence of consequential damages for the breach of contract claim. The court explained that a party could recover consequential damages if they were "proximately caused by" or "flowed naturally from" the breach and were within the contemplation of the parties at the time they entered into the contract. The court observed, however, that because this was an "as is" contract, the items a buyer may recover as consequential damages is limited, and concluded that because none of the items for which Peterson sought damages were included in the contract, such evidence was barred by the "as is" clause. The court also rejected Peterson's claim that the contract was ambiguous.

¶ 22. With only the breach of contract claim remaining, and as a result of the court excluding evidence of consequential damages, the parties stipulated to the damages being $3,388.50 and judgment was entered against Cornerstone for that amount, and Cornerstone was awarded $3,594.93 in costs. This appeal follows.

## II. ANALYSIS.

¶ 23. On appeal, Peterson pursues two issues: (1) whether the trial court erred in dismissing her claim based on a violation of WIS. STAT. § 100.18(1);[5]

---

[5] Although the summary judgment encompassed not only Peterson's WIS. STAT. § 100.18(1) claim, but also her claims of misrepresentation, she appeals only the dismissal of her § 100.18(1) claim.

and (2) whether the trial court erred in excluding evidence of consequential damages with respect to her breach of contract claim.

## A. *Wisconsin Stat. § 100.18(1)*

¶ 24. Peterson contends that the trial court erred in granting Cornerstone's motion to reconsider, dismissing her claim under WIS. STAT. § 100.18, because it erroneously concluded that the economic loss doctrine and the contract's integration clause bar a § 100.18(1) claim.

¶ 25. We review the grant or denial of a summary judgment de novo, employing the same methodology as the trial court. *Spring Green Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 315; WIS. STAT. § 802.08(2).

¶ 26. WISCONSIN STAT. § 100.18, entitled "Fraudulent representations,"[6] protects the public from all "untrue, deceptive or misleading" representations made

---

[6] WISCONSIN STAT. § 100.18, provides in relevant part:

**Fraudulent representations. (1)** No person, firm, corporation or association, or agent or employee thereof, with intent to sell, any real estate or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase [or] sale of any real estate shall make, publish, disseminate, circulate, or place before the public in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public

in sales and promotions, including representations made in face-to-face sales. *See, e.g., State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 665, 221 N.W.2d 683 (1974); *Bonn v. Haubrich*, 123 Wis. 2d 168, 173, 366 N.W.2d 503 (Ct. App. 1985).

¶ 27. Peterson first responds to the trial court's conclusion that her WIS. STAT. § 100.18 claim is barred by the economic loss doctrine by pointing to *Kailin v. Armstrong*, 2002 WI App 70, 252 Wis. 2d 676, 643 N.W.2d 132, which explicitly held that the economic loss doctrine does not bar § 100.18 claims. *Kailin*, 252 Wis. 2d 676, ¶¶ 2, 43. In her reply, Peterson emphasizes the timing of when the allegedly misleading statements were made and asserts that "if Cornerstone made the representations asserted by Ms. Peterson in inducing her to purchase the condominium it is actionable under WIS. STAT. 100.18(1)," and that to prevail she must show only "that as a covered member of the class the statute protects, Cornerstone[,] in inducing her to purchase the condominium[,] made a representation or representations which were untrue, deceptive or misleading resulting in her suffering damages."

¶ 28. Addressing the trial court's second reason for dismissing her WIS. STAT. § 100.18 claim, Peterson submits that the integration clause does not bar a § 100.18 claim because "[i]ntegration clauses cannot be used to escape liability for misrepresentations." She relies heavily on *Grube v. Daun*, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992) for support, and cites it for the proposition that "integration clauses *do not* negate representations which are not part of the written

relating to such purchase [or] sale of such real estate or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

815

contract" (underlining by Peterson). In her reply, continuing to cite *Grube*, she asserts that the integration clause "cannot eliminate the protection [of] this statute and the remedy it affords" because "[t]he purpose of WIS. STAT. 100.18(1) is to protect individuals such as Ms. Peterson from just the type of untrue, deceptive and misleading misrepresentations she alleges were made to her by Cornerstone."

¶ 29. Cornerstone responds by first conceding that the economic loss doctrine does not bar a WIS. STAT. § 100.18 claim and that an integration clause does not bar a misrepresentation claim,[7] but asserts that in arguing that integration clauses cannot be used to escape liability for misrepresentation, Peterson mistakenly combines her § 100.18 claim, the subject of this appeal, with her misrepresentation claim, which she elected not to appeal, "to argue incorrectly as to the integration clause's ability to bar a [§ 100.18] claim." Cornerstone asserts that Peterson's reliance on *Grube* heightens her error of combining the § 100.18(1) and misrepresentation claims because, unlike Peterson's contract, which explicitly precludes a reliance on a representation that is allegedly untrue, deceptive or misleading, the integration clause in *Grube* dealt with the phrase "as is." Cornerstone submits that the inte-

---

[7] At oral argument, Cornerstone argued that as a result of subsequent developments in the economic loss doctrine in Wisconsin, specifically *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205, the economic loss doctrine may in fact bar a WIS. STAT. § 100.18 claim and hence trump contrary language in *Kailin v. Armstrong*, 2002 WI App 70, 252 Wis. 2d 676, 643 N.W.2d 132. Because we conclude that Peterson's § 100.18 claim is barred by the integration clause, we do not further address the possible applicability of the economic loss doctrine.

gration clause here bars § 100.18(1) claims because Peterson never alleged that "oral representations" were incorporated into the contract to vary the terms of the written documents, and because there is no case law stating that an integration clause does not bar a § 100.18 claim.

■

¶ 30. We begin by noting that Peterson correctly asserts, and Cornerstone properly concedes, that a Wis. Stat. § 100.18(1) claim is not barred by the economic loss doctrine under *Kailin*, 252 Wis. 2d 676, ¶ 43 ("We conclude the economic loss doctrine does not apply to claims under Wis. Stat. 100.18."). We therefore need not address the economic loss doctrine further. Consequently, the only issue before us is whether the contract's integration clause bars a § 100.18(1) claim. We conclude that it does.

■

¶ 31. The general rule is that when a contract includes an integration clause, evidence of contemporaneous or prior oral agreements relating to the same subject matter are not admissible. *Matthew v. American Family Mut. Ins. Co.*, 54 Wis. 2d 336, 341–42, 195 N.W.2d 611 (1972). In conjunction with the parol evidence rule,[8] an integration clause generally bars the introduction of extrinsic evidence to "vary or contradict the terms of a writing." *Ziegler Co. v. Rexnord, Inc.*, 139

---

[8] The parol evidence rule can be stated as follows:

> When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake.

*Federal Deposit Ins. Corp. v. First Mortgage Investors*, 76 Wis. 2d 151, 156, 250 N.W.2d 362 (1977) (footnote omitted).

817

Wis. 2d 593, 608–09 n.11, 407 N.W.2d 873 (1987). Absent claims of duress, fraud, or mutual mistake, integration clauses are given effect. *See, e.g., Matthew,* 54 Wis. 2d at 341–42 (giving effect to integration clause).

¶ 32. In *Grube,* cited by Peterson, this court discussed the applicability of integration clauses. *Grube* involved the sale of a farm in an "as is" condition, where the purchasers sued the real estate broker, seller, previous owner, and the previous owner's liability insurer for making allegedly untrue assertions about the property and for failing to disclose the existence of an underground gasoline tank that was later found to have caused groundwater contamination. *Id.,* 173 Wis. 2d at 46–47. The purchasers alleged negligence, intentional misrepresentation, strict liability for misrepresentation, negligent misrepresentation and deceptive or misleading advertisement in violation of WIS. STAT. § 100.18. *Grube,* 173 Wis. 2d at 47–48. The trial court granted summary judgment on all five counts and the purchasers appealed. *Id.* at 49.

¶ 33. On appeal, this court discussed the integration clause, phrased as an "as is" clause, and addressed the question of "whether an 'as is' clause shields the seller and his agent only from breach of warranty claims in contract, or also from tort claims based on misrepresentation." *Id.* at 59. We acknowledged that "Wisconsin follows the general rule that integration clauses which negate the existence of any representations not incorporated into the contract may not be used to escape liability for the misrepresentations[,]" *id.* at 59–60, ultimately reversing the order granting summary judgment on the misrepresentation claim, *id.* at 62.

¶ 34. In another discussion, separate from our analysis involving the "as is" clause, we addressed the remaining cause of action based on a violation of WIS.

STAT. § 100.18. We concluded that the defendants had not provided any basis for a *prime facie* defense and therefore also allowed that claim to go forward. *Grube*, 173 Wis. 2d at 62–63.

¶ 35. Peterson's reliance on *Grube* is misplaced. She apparently fails to realize that although *Grube* did involve a WIS. STAT. § 100.18(1) claim, the portions she cites for support address the applicability of the "as is" clause as a bar to common law misrepresentation claims, not a § 100.18 claim. *See Grube*, 173 Wis. 2d at 59. Because Peterson elected not to appeal her misrepresentation claims, she cannot now rely on *Grube*'s holding that integration clauses do not bar misrepresentation claims to support her arguments that she should be allowed to bring a § 100.18 claim.

¶ 36. However, even if the holding from *Grube* is applied to Peterson's statutory claim, *Grube* is still easily distinguishable because Peterson overlooks an important distinction between the integration clause in her contact and the one in *Grube*. In *Grube*, we noted that to be effective, disclaimers in the form of integration clauses will not be honored, as matter of public policy, unless the disclaimer is specific as to the tort that is being disclaimed and the disclaimer makes it "apparent that an express bargain was struck to forego the possibility of tort recovery in exchange for negotiated alternative economic damages." 173 Wis. 2d at 60 (citing *Phillips Petroleum Co. v. Bucyrus-Erie Co.*, 131 Wis. 2d 21, 33, 388 N.W.2d 584 (1986)). Stated differently, although exculpatory clauses are closely scrutinized and void if they violate public policy, *Mettler ex rel. Burnett v. Nellis*, 2005 WI App 73, ¶ 13, 280 Wis. 2d 753, 695 N.W.2d 861, they are enforceable so long as they "clearly, unambiguously, and unmistakably inform

819

the signer of what is being waived," *Yauger v. Skiing Enters., Inc.*, 206 Wis. 2d 76, 84, 557 N.W.2d 60 (1996).

¶ 37. The integration clause in *Grube* was merely an "as is" clause, stating: "Buyer is buying the property in a [sic] as is condition without any warranties." *Grube*, 173 Wis. 2d at 47 (bracketing in *Grube*). In Peterson's contract, by contrast, three different provisions expressed that all prior negotiations were excluded and that only the text of the written documents constituted the contract: "This Offer, including any amendments to it, contains *the entire agreement* of the Buyer and Seller regarding the transaction. *All prior negotiations and discussion have been merged into this Offer*"; "Seller has made no representations other than written in this offer and attached documents concerning the property"; and finally:

> The Buyer acknowledges, subject to the Limited Warranty contained in Exhibit E . . . (c) other than those written representations concerning the condition of the Property contained in the Condominium Offer to purchase, including the Exhibits annexed thereto, *she has not relied on any representations made by the Seller in entering into the Condominium Offer to Purchase . . . .*

(Emphasis added.) Thus, unlike the clause in *Grube*, the integration clause here specifically disclaims the purchaser's right to rely on any alleged fraudulent misrepresentations. Indeed, the three provisions of Peterson's contract that expressly stated that the written contract made up the entire contract, to the exclusion of all other provisions, provide exactly the kind of specific disclaimer that makes it apparent that an express bargain had been struck. *See Grube*, 173 Wis. 2d at 60. With an integration clause, worded as clearly and unmistakably as the one in question, we see no reason not to give the integration clause its intended effect.

¶ 38. We are also not convinced by Peterson's emphasis on the timing of the alleged statements and her argument that they occurred before the purchase was completed and that she therefore was induced into purchasing the condominium. In addition to being precluded by the reasons already discussed, she appears to misstate the applicable law. In *Grube,* we concluded that "while the 'as is' [integration] clause is not a complete bar" to claims of negligence and misrepresentation, unless the seller makes affirmative misrepresentations, the clause shifts the burden to the buyer to determine the condition of the property:

> [T]he "as is" clause put[s] the burden upon a buyer to determine the condition of the property purchased. This shifting of the burden, with nothing more, protects a seller and his or her agent from claims premised upon nondisclosure. But we hold that once the seller or his agent has made an affirmative representation about some aspect of the property, the buyer is entitled to rely upon that statement and expect full and fair disclosure of all material facts relating to that aspect of the property.

*Id.* at 61 (citations omitted; emphasis in original). In *Grube,* the defendants made an untrue statement about wells that turned out to be contaminated, and it was this affirmative representation that constituted a viable Wis. Stat. § 100.18 claim. *Grube,* 173 Wis. 2d at 62.

¶ 39. Here, Peterson does not dispute that she was given the opportunity, and in fact did, inspect the property prior to entering into the purchase contract. She therefore had to show that Cornerstone made affirmative representations upon which she relied. Unlike the situation in *Grube,* Peterson never provided affidavits alleging that she inquired about the property, and that Cornerstone made an affirmative representa-

tion in response to her inquiry. She likewise never provided affidavits alleging that she did not get the property in the condition in which she agreed to purchase it. In fact, Peterson continually states only that Cornerstone made "representations and omissions" that entitle her to relief under WIS. STAT. § 100.18(1), but she fails to specify what those alleged representations or omissions were or even reference portions of the record to indicate exactly what she is referring to.[9] Because Peterson chose to go forward with the closing, having inspected the property, and because she has failed to identify the representations that she alleges were false, she cannot now allege false advertising.

¶ 40. Accordingly, the integration clause governs and bars Peterson's claim under WIS. STAT. § 100.18(1).[10]

## B. Consequential Damages

¶ 41. Peterson also contends that the trial court erred in granting Cornerstone's motion *in limine* to exclude evidence of consequential damages regarding her breach of contract claim because it erroneously

---

[9] Curiously, despite extensive discovery and ample time, Peterson repeatedly refers to the allegations she made in her complaint.

[10] If one party to a contract with a disclaimer, integration clause, or similar provision lacks the sophistication in business matters or possesses unequal bargaining power, this provides a basis for voiding that clause. *See, e.g., Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶ 22, 274 Wis. 2d 719, 685 N.W.2d 154. Here, however, because Peterson was represented by an attorney throughout the entire proceeding, she cannot be said to have lacked the necessary sophistication or to have been disadvantaged by unequal bargaining power.

concluded that the fact that she purchased her condominium "as is" bars consequential damages.

¶ 42. "We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698 (citations omitted). However, when the exercise of such discretion turns upon a question of law, we review the question *de novo,* benefiting from the trial court's analysis. *Gulmire v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 18, ¶ 10, 269 Wis. 2d 501, 674 N.W.2d 629. Here, we are asked to interpret the purchase contract to determine whether it allows for the recovery of consequential damages, which is a question of law. *See Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App. 1987). Whether the terms of a written contract are ambiguous is also a question of law that we review *de novo. Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 24, 233 Wis. 2d 314, 607 N.W.2d 276.

¶ 43. Peterson contends that she should be allowed to introduce evidence of consequential damages because she asserts that, as a result of Cornerstone's breach of contract, she is entitled to recover such damages. She maintains that Cornerstone breached the contract by failing to: provide a unit fit for its intended purpose, well constructed and upon her completion ready for occupancy; perform repairs and construction and provide materials prior to or at the closing, as agreed in Revised Exhibit A; provide a unit free from latent defects, as promised in the Limited Warranty; and assume the responsibilities agreed upon in the Limited Warranty in the event a latent defect was

823

discovered. Peterson asserts that these breaches and failures entitle her to recover consequential damages.

¶ 44. Responding to whether the contract's "as is" clause bars her from recovering consequential damages, Peterson submits that the contract is ambiguous because it contains an "as is" clause, as well as a Limited Warranty, and a clause assuring that Cornerstone would fulfill certain obligations prior to or at the closing (Revised Exhibit A), and that the these conflicting provisions cannot be applied harmoniously. Peterson notes that while Cornerstone could have inserted an "as is" clause without a warranty or promising to meet other obligations, or provided specific disclaimers effecting warranties and damages, Cornerstone did not. Peterson further submits that the only way to harmonize these provisions is by giving meaning to either the "as is" clause or the Limited Warranty and Revised Exhibit A, and citing *Goldmann Trust v. Goldmann*, 26 Wis. 2d 141, 131 N.W.2d 902 (1965), for the proposition that "[s]pecific provisions of a contract take precedence over conflicting general provisions," she argues that the "as is" clause cannot be given meaning. Referring to the "as is" clause as a "poor boilerplate effort . . . to shift responsibility" to her, Peterson asserts that:

> The "as is" clause has no realistic meaning or effect given the specific provisions of Revised Exhibit A and Exhibit E. These specific provisions must be given effect for them to be meaningfully enforceable contractual provisions. These provisions either created an exception to the "as is" clause or negated it completely. Cornerstone's breach of either or both gave rise to a breach of contract claim for which consequential damages are recoverable.

¶ 45. Cornerstone responds that the trial court correctly barred Peterson from introducing evidence of

consequential damages, and that the only money Peterson should recover is the $3,388.00 the parties agreed to at the closing.

¶ 46. Cornerstone first notes that Peterson fails to identify the damages she believes constitute consequential damages. Cornerstone then maintains that the contract itself explicitly limits her right to collect consequential damages for several reasons: with the exception of the items identified in the Limited Warranty, it bars her from recovering damages for patent and latent defects in the construction of the property; Peterson herself agreed at the closing that Cornerstone had no additional obligations to her, including the supply of labor, except those specifically agreed to in Revised Exhibit A; and the "as is" clause bars consequential damages because an "as is" clause puts the burden on a buyer to determine the condition of the property purchased.[11]

¶ 47. We begin by addressing the "as is" clause and by examining whether the contract is ambiguous. In *Omernik v. Bushman*, 151 Wis. 2d 299, 444 N.W.2d 409 (Ct. App. 1989), we held that "[a]n 'as is' clause in a real estate contract puts the burden upon a buyer to deter-

---

[11] Cornerstone also contends that consequential damages for the loss of the property's appreciated value are barred as a matter of law because Peterson "cannot allege a fraud in the contract formation and avoid its integration clause, yet seek benefit of the bargain damages." We decline to address the issue of consequential damages for the loss of the property's appreciated value because it appears as though Peterson is no longer seeking such damages. Although a claim for lost appreciation was among the eleven alleged damages she originally brought, her Pretrial Report did not mention such damages and neither do her appellate briefs.

825

mine the condition of the property purchased." *Id.* at 303. Similarly, as already noted in our discussion about the integration clause, *Grube* affirmed the same principle. 173 Wis. 2d at 61. We agree with Peterson that the contract's more specific provisions, the Limited Warranty and Revised Exhibit A, do conflict with the "as is" clause, and we further agree that under *Goldmann*, the Limited Warranty and Revised Exhibit A should be given meaning. We disagree with Peterson, however, that the existence of a Limited Warranty and the additional obligations set forth in Revised Exhibit A render the "as is" clause meaningless. We also disagree that a contract that sells a property "as is," yet provides a Limited Warranty and other obligations, is ambiguous: The only reasonable interpretation of this contract is that with the exception of the specific items covered by the Limited Warranty and Revised Exhibit A the condominium was sold "as is." *See, e.g., Jones v. Jenkins*, 88 Wis. 2d 712, 722, 277 N.W.2d 815 (1979) ("A contract provision which is reasonably and fairly susceptible to more than one construction is ambiguous."). With respect to Revised Exhibit A, because the parties specifically agreed at the closing that the amount owed was $3,388.00, we see no reason to further discuss that provision. With respect to the Limited Warranty, by contrast, we conclude that because the "as is" clause is limited by the warranty, the Limited Warranty, if breached, does indeed permit a claim for consequential damages.

■■■■

¶ 48. Consequently, the items not covered by the Limited Warranty are subject to the "as is" provision, and with respect to those it was Peterson's responsibility to inspect the property prior to entering into the contract. *See Omernik*, 151 Wis. 2d at 303. Peterson, as

mentioned, was given the opportunity and did inspect the condominium and is therefore precluded from claiming consequential damages for the items that fall under the "as is" clause. The question therefore becomes what the Limited Warranty covers.

¶ 49. First, a major problem with Peterson's argument is that in her appellate briefs she fails to specify what the damages she alleges stem from. Indeed, she fails to even provide a dollar amount.[12] Earlier in the proceeding, however, Peterson had specified eleven different areas for which she was seeking consequential damages. Referring to the trial court's ruling excluding consequential damages, her brief-in-chief in fact references "eleven categories of Ms. Peterson's claimed damages," yet she fails to elaborate on what those categories are or explain whether she is still seeking consequential damages for those same categories. What seems to be the most recent list of consequential damages sought by Peterson appears in her Pretrial Report, also presented at a hearing on May 18, 2004, which indicates the following eight categories of damages: (1) mortgage payments of $1,670.00 per month since September 2001; (2) condominium dues since September 2001;

---

[12] In fact, the closest she comes to explaining the alleged damages is on the last page of her reply brief in attacking Cornerstone's assertion that she should have put in her kitchen sink when she notes:

> Cornerstone over simplifies the condition of Ms. Peterson's unit. It wasn't just the sink. It was poor construction including significant roof issues, ceiling construction, heating and air conditioning design and execution, water leakage and mold. The unit was because of these problems rendered uninhabitable. Ms. Peterson has expended substantial dollars attempting to make the unit habitable.

These brief mentions of what she actually alleges was wrong with her unit were not accompanied by citations to the record.

(3) real estate taxes since September 2001; (4) storage fees since August 2001; (5) $28,432.28 for undelivered materials; (6) square footage adjustment due to Peterson's misunderstanding as to the size of the unit; (7) $33,373.00 to complete the unit; and (8) Peterson's share of any assessment to repair common elements. We will assume that these are still the damages currently sought by Peterson.

¶ 50. Assuming that Peterson is in fact still seeking the same damages she reported in her Pretrial Report, much of her claim is still problematic. In general, the amount of consequential damages to which a party is entitled "is limited to such damages as are the natural and probable consequences of the breach and were within contemplation of the parties when the contract was made." *General Star Indem. Co. v. Bankruptcy Estate of Lake Geneva Sugar Shack, Inc.*, 215 Wis. 2d 104, 119–20, 572 N.W.2d 881 (Ct. App. 1997). The damages must "flow directly and necessarily from the breach of contract, and must be reasonably foreseeable at the time the contract was made as a probable result of the breach." *Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 321, 306 N.W.2d 292 (Ct. App. 1981); *see also* Wis JI—Civil 3710. In addition, under general principles of contract law, "[a]n injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but for the failure of the other party to perform[,]" *Thorp Sales Corp. v. Gyuro Grading Co.*, 111 Wis. 2d 431, 438–39, 331 N.W.2d 342 (1983), however, "[a] party is not entitled to be placed in a better position because of a breach than he would have if the contract had been performed," *Hanz Trucking, Inc. v. Harris Bros. Co.*, 29 Wis. 2d 254, 268, 138 N.W.2d 238 (1965).

¶ 51. Here, the only contract provision that mentioned damages was the Limited Warranty, and therefore the only damages that Peterson may recover are ones resulting from "latent defects due to faulty materials or workmanship." Because these were the only damages contemplated by the parties at the time they entered into the contract, any other damages do not meet the definition of consequential damages. *See General Sta r*, 215 Wis. 2d at 119–20. It follows that damages for mortgage payments, condominium dues, real estate taxes, storage fees, square footage adjustment, and the cost to complete the unit, are not included as none of these come close to being covered by the Limited Warranty. Particularly baffling is Peterson's demand that she be compensated for the cost of completing the unit, since the contract explicitly provided that she would complete the construction, and it was clearly understood that she was allowed to purchase the unit for a lower price in exchange for completing the construction herself.

██

¶ 52. Nonetheless, because at this point it is unclear what exactly Peterson is seeking, we conclude that such general descriptions as undelivered materials—with the exception of those already covered by Revised Exhibit A—and Peterson's share of any assessment to repair common elements, could potentially qualify as "latent defects due to faulty materials or workmanship." Therefore, Peterson may pursue consequential damages under her breach of contract claim, with respect to damage stemming from the alleged breach of the Limited Warranty. We emphasize that only damages resulting from "latent defects due to faulty materials and workmanship" are included, and that this narrow definition in particular does not in-

clude the cost to complete the property, mortgage payments, real estate taxes, storage fees, or the like.

¶ 53. Moreover, another important consideration in determining damages is that "[t]he party alleging breach of the contract has a duty to mitigate damages, that is, 'to use reasonable means under the circumstances to avoid or minimize the damages.' " *Kramer v. Board of Educ. of the Sch. Dist. of the Menomonie Area*, 2001 WI App 244, ¶ 13, 248 Wis. 2d 333, 635 N.W.2d 857 (citing *Kuhlman, Inc. v. G. Heileman Brewing Co.*, 83 Wis. 2d 749, 752, 266 N.W.2d 382 (1978)). "An injured party cannot recover any item of damage that could have been, or was, avoided." *Id.*; *see also* Wis JI—Civil 1731. Cornerstone contends that Peterson failed to mitigate or even attempt to mitigate her alleged inability to use the condominium, and therefore should not be allowed to recover the consequential damages she seeks. For instance, to obtain a certificate of occupancy Peterson was required to install a kitchen sink, but apparently fearing that the sink would sustain damage from the yet to be completed construction, she refused to install the sink and is now claiming damages because she was unable to live in her condominium. Cornerstone notes that although she could have, for instance, covered up the sink, "Peterson made a conscious, yet expensive choice, to incur damages for her alleged inability to occupy the property." Because the law requires mitigation, should Peterson's breach of contract claim under the Limited Warranty succeed, in subsequently determining Peterson's damages, it will be necessary to determine whether she satisfactorily mitigated her damages.

¶ 54. In sum, we affirm the order dismissing Peterson's claim based on a violation of Wis. Stat. § 100.18; we affirm the judgment awarding Peterson

$3,388.00 for breach for contract, for damages under Revised Exhibit A; and we reverse the order granting Cornerstone a motion in limine to exclude evidence of consequential damages under the breach of contract claim with respect to the Limited Warranty only, and affirm the order with respect to all other claims for damages.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.