**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 9, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.   **2024AP2364**
**2024AP2365**
**2024AP2366**

STATE OF WISCONSIN

Cir. Ct. Nos.  2024SC345
2024SC394
2024SC398

IN COURT OF APPEALS
DISTRICT IV

---

NO. **2024AP2364**

KASSANDRA LEE OPSAHL AND PETER C. OPSAHL,

PLAINTIFFS-RESPONDENTS,

V.

CASTLE ROCK LAKE CAMPGROUND, LLC,

DEFENDANT-APPELLANT.

---

No. 2024AP2365

JANE LEIS AND KELLY F. LEIS,

PLAINTIFFS-RESPONDENTS,

V.

CASTLE ROCK LAKE CAMPGROUND, LLC,

DEFENDANT-APPELLANT.

No. 2024AP2366

JAMES JOSEPH DEGENHARDT AND JANICE ANN DEGENHARDT,

PLAINTIFFS-RESPONDENTS,

V.

CASTLE ROCK LAKE CAMPGROUND, LLC,

DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] The operator of a private campground, Castle Rock Lake Campground, LLC ("Castle Rock"), appeals small claims judgments in favor of three families who sought to use the campground for the 2024 season.

---

[1] This court consolidates these three appeals on its own motion. WIS. STAT. RULE 809.10(3) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version. These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(a).

2

The families contracted with Castle Rock to camp there, but shortly after they arrived, they were ejected by Alex Wodlarksi, the campground owner. Wodlarski took the position that the ejection was justified because the families violated their contracts. The circuit court found to the contrary that Castle Rock ejected the campers because Wodlarski was upset with the campers for lodging grievances about the campground, and not because the campers violated their contracts. Based on Castle Rock's breach of the contracts, the court awarded the families as damages amounts equaling the seasonal fees that they had paid. On appeal, Castle Rock primarily argues that the court misinterpreted the contract terms.

¶2 I apply the pertinent contract terms to the findings of the circuit court, which Castle Rock does not show were clearly erroneous. This leads to my conclusion that the campers established that Castle Rock breached the contracts. I also conclude that Castle Rock fails to show that the fees paid by the campers do not represent a proper measure of damages under the circumstances.

## BACKGROUND

¶3 The campers were Kassandra Opsahl and Peter Opsahl, James Degenhardt and Janice Degenhardt, and Jane Leis and Kelly Leis. They filed three small claims actions in June 2024, filing similar complaints, each naming Castle Rock as the defendant.[2] Each set of campers sought $2,865 in damages, which the Opsahls in particular described as a "full refund" of the fees that they paid Castle Rock under the seasonal contracts.

---

[2] For purposes of this appeal, there is no dispute about Wodlarski's ownership of Castle Rock or about his ability to speak on its behalf. Therefore, there is no reason to recognize any distinctions between Wodlarski's acts and Castle Rock's acts.

¶4 The Opsahls' complaint included the most detailed allegations, which included the following. The three families each signed contracts with Castle Rock to use the campground during the 2024 camping season (April to October). But Castle Rock delayed the date on which the campers could occupy their respective camping sites by several weeks and changed the sites that the campers were to occupy. Further, once they arrived at the campground, the campers learned that Castle Rock had established a walking trail unreasonably near the sites and also that various promised amenities did not exist. The campers also alleged that Castle Rock erroneously designed the sites, which resulted in the campers having to remove their trailers from their assigned sites to allow for fixes. In light of these grievances, the campers asked Castle Rock if they could terminate their contracts and receive partial refunds. Castle Rock told the campers that there would be no refunds of any amount. The campers moved their possessions from the campsites to allow Castle Rock to make needed changes to the sites. The campers emailed Castle Rock requesting that it inform them when they could return. Castle Rock responded by email, stating that it was ejecting them from the campground.

¶5 In response to the complaints, Castle Rock filed brief answers alleging that it had ejected the campers based on their "inappropriate behavior and conduct," and that the campers were not entitled to refunds under the terms of their contracts.

¶6 The circuit court held a small claims trial in October 2024, jointly addressing the three sets of shared claims made by the campers and Castle Rock's defenses, with the court acting as the finder of fact. The Opsahls, Jane Leis, James Degenhardt, and Wodlarski testified.

¶7 The following facts were undisputed at trial. In November 2023, each set of campers entered into an identical "Seasonal Agreement" with Castle Rock, which I refer to as the contract or contracts. Under the contracts, the campers agreed to pay $2,865 per family in exchange for access to the campground for the 2024 camping season, including the right to occupy three sites for their vehicles and equipment. The campers "agree[d] to be bound by and comply with" Castle Rock's "rules and regulations," and they each signed a document entitled "Campground Rules." The contracts also state that there could be "[n]o refunds for all seasonal site fees or park model sales deposits/payments[;] this is non-negotiable."

¶8 Central to the issues on appeal, the campground rules included the following as the first rule:

> Safety is the Campground's #1 priority. Those not following our rules, regulations (and [who engage in] other acts and behaviors not deemed appropriate as determined by Management), will be asked to immediately leave the Campground without any refund(s). Lack of common sense or ignorance is not an excuse for inappropriate behavior or rule breaking.

¶9 The circuit court ruled in favor of the campers, awarding three money judgments, each for $2,865, plus costs. Castle Rock appeals each judgment.

## DISCUSSION

¶10 Beginning with a terminology point, this opinion refers to relevant conduct of Castle Rock as "the ejection" of the campers from the campground. The circuit court and the parties have used variations on the words "remove" and "termination" in referring the Castle Rock's notice to the campers that: it was

declaring the contractual relationship terminated; the campers could not return to the campground; and Castle Rock would make no refunds of fees. For this concept, I use "eject" and "ejection," which is a term that Wodlarski used in his trial testimony.

¶11    Castle Rock argues that the circuit court erred in failing to properly apply the language of the contracts, because the court failed to recognize that the contracts give Castle Rock authority to eject guests whom Castle Rock deemed were not following its rules. Castle Rock contends that the court effectively rewrote the contracts to include terms not present in unambiguous language. For example, Castle Rock argues that the court inserted the requirement that Castle Rock show "reasonable grounds" to eject the campers.

¶12    Castle Rock's arguments all fail because they fail to come to grips with the relevant findings of the circuit court, which Castle Rock does not show were clearly erroneous. Notably, this included a finding that Wodlarski was not credible when he testified that he decided that the campers violated a campground rule, including by acting inappropriately. Taken together, the court's findings establish that Castle Rock breached the contracts by ejecting the campers, because Wodlarski was aware that he lacked a contract-based reason to do so. After summarizing the pertinent legal standards and additional background from the trial, I explain this conclusion further.

¶13    This court will not disturb relevant circuit court findings of fact unless they are clearly erroneous. ***Buddy's Plant Plus Corp. v. Viking Masek Glob. Packaging Techs., LLC***, 2025 WI App 46, ¶22, 417 Wis. 2d 723, 25 N.W.3d 613 (citing WIS. STAT. § 805.17(2)). This court reviews de novo both the meaning of contract language and whether the facts found by the circuit court

6

constitute a breach of contract. *Id.*; *Steele v. Pacesetter Motor Cars, Inc.*, 2003 WI App 242, ¶10, 267 Wis. 2d 873, 672 N.W.2d 141.

*Additional Background*

¶14 The campers testified to various grievances, consistent with the allegations in the complaints. Their grievances included the delay in a start date, the changing of assigned sites, shortcomings in amenities (such as Wi-Fi access), and the walking trail in an inopportune location. The campers also testified to flaws in the placement of gravel pads for recreational vehicles, which were flaws that the campers understood required them to move their vehicles and equipment so that the pads could be fixed.

¶15 For the most part, Wodlarski in his trial testimony did not dispute the campers' testimony regarding their grievances. But he provided context from his perspective. For example, regarding some of the issues involving amenities, Wodlarski testified that he had clearly explained to the campers before they signed the contracts that Castle Rock planned to add some of the amenities in the future and that these amenities would not be available at the start of the 2024 camping season. Regarding the need to fix alleged defects in the gravel pads, Wodlarski testified that he merely informed the campers that one of their trailers needed to be reoriented to permit a utilities hook-up.

¶16 The two sides disputed the tone and nature of a contentious conversation that the campers had with Wodlarski about the campers' grievances. One camper testified that both sides used a "matter of fact" tone. Another camper testified that this conversation was "heated," but that it did not involve any "hollering." Wodlarski testified that the conversation was "concern[ing]" to him

and "upset[ing]" to him, but that it was not "heated enough that [Wodlarski] felt [that he] needed to call the police."

¶17    Later on during the same day as this conversation, the campers removed their vehicles and equipment from the sites. The next day, the campers sent a joint email to Wodlarski. They stated that they recognized that their conversation of the previous day had become "heated." The email further stated that:

> As a group we decided to pull our campers off of the sites. We found temporary alternative sites until you are able to place the gravel pads in the appropriate places, extend the internet so we have internet access, and place the walking path. Please let us know when this is completed and we are able to return. We ask that you would consider a partial refund for our inconvenience and the additional expenses incurred due to alternative site rentals. We placed our campers on the pads that you had placed for us. We built our decks and placed our storage buildings as well. We removed everything to allow you to lay[ ]out the lots as you intended. We are hopeful that you will complete this work in a timely fashion.

¶18    Wodlarski testified that, after the campers sent this email to him, other guests at the campground told Wodlarski that the campers had "yelled and screamed" at these other guests. Wodlarski further testified that "[o]ther campers expressed concerns which made my park feel unsafe, and thus I had to eject them from the campground."

¶19    Wodlarski emailed a letter in response, bearing the subject line, "Notice to Seasonal Guest Immediately Terminating Agreement." This letter stated, in pertinent part:

> Castle Rock Lake Campground … has determined
> that it is in the best interests of the Campground and its

> guests to terminate your Seasonal Agreement and remove you from the Campground.…
>
> You failed to follow the first rule in the campground rules document [and] you are no longer welcome at the campground. You failed to follow the first rule by yelling and swearing at me, as well as other guests at the park. These behaviors were also displayed by your children. These behaviors are not tolerated.

The letter further quoted the allegedly violated rule, which to repeat stated, "Those not following our rules, regulations (and [who engage in] other acts and behaviors not deemed appropriate as determined by Management), will be asked to immediately leave the Campground without any refund(s)."

¶20 The circuit court found that, after Castle Rock delayed in allowing the campers to move their recreational vehicles onto the campground property, the sites designated for the campers were not properly prepared. The parties had a conversation in which both sides became "heated." But, the court also found, the conversation "wasn't extremely loud." The court described the campers as "a little upset" due to amenities issues. The court further noted that no other campground guests testified, leaving no corroboration for Wodlarski's testimony that the campers behaved inappropriately toward, or otherwise bothered, other guests.

¶21 The court also found that, once Wodlarski received the email from the campers stating their intent to return to the campground after the pads were fixed, Wodlarski decided that he was "done with" the campers because he was "ticked off" at them. It follows from this finding that the court did not credit Wodlarski's testimony to the effect that he had made a determination that the campers violated a campground rule or otherwise acted inappropriately. Instead, the court found, he decided to eject them merely because he was frustrated by their

9

grievances. Put differently, the court found that the ejection was not based on a contract violation but instead was based on personal pique.

*Analysis*

¶22   Based on the factual findings made by the circuit court, I conclude that the campers proved that Castle Rock breached the contracts, because at the time of the ejection Wodlarski did not in fact determine that the campers had not followed Castle Rock's rules, including the rule barring acts that Castle Rock viewed as inappropriate. *See* **Steele**, 267 Wis. 2d 873, ¶10 ("In evaluating a breach of contract claim, a court must determine whether a valid contract exists, whether a party has violated its terms, and whether any such violation is material such that it has resulted in damages." (citing **Management Computer Servs., Inc. v. Hawkins, Ash, Baptie Co.**, 206 Wis. 2d 158, 178-83, 557 N.W.2d 67 (1996))). Instead, he ejected them merely because he was, in the words of the court, "ticked off" at them for raising grievances. In short, Castle Rock accepted payment from the campers, but then denied them the benefit they had paid for, without a basis under the contract to do so. That is, Castle Rock's "performance" under the contracts was "due," but it failed to perform consistently with its obligations. *See id.*, ¶11 (failure to fully perform when performance is due is a breach).

¶23   Explaining further, stated in terms of the campground rules, the court essentially found that Castle Rock did not in fact "deem[]" or "determine[]" that any of the campers' "act and behaviors" were "[in]appropriate." As a result, there was no basis under this rule to have the campers "immediately leave … without any refund[]." The ejection prevented the campers from receiving the benefit to them of the contracts, namely, the right to camp there for the 2024 season. Castle Rock identifies no provision in the contract that allowed Castle

10

Rock to unilaterally prohibit the campers from receiving the campground access that they paid for absent an actual determination by Castle Rock that the rules had been violated, including the rule barring conduct that Castle Rock deemed inappropriate.

¶24 Castle Rock contends that the circuit court erred by requiring it to prove that the campers were "disorderly and loud" before Castle Rock could be justified in ejecting them. This argument is based on the following statement of the court: "[F]or this contract dispute … I think [Castle Rock] would have had to prove at least that [it] had reasonable grounds to remove [the campers]. And [Castle Rock would] have to prove that they were, in essence, disorderly, loud." I interpret the court's use of "reasonable grounds" to mean only the following. Castle Rock was required to show, but could not show, that there was in fact some violation of the campground rules, including the inappropriate-in-Castle-Rock's-view rule, as opposed to merely emotions generated by heated conservation. Further, whatever the court might have intended to convey in making this particular comment, it does not change relevant findings of the court that I independently conclude are dispositive, as explained above.[3]

---

[3] I need not reach what appears to be an argument by the Opsahls on appeal that the contracts should be interpreted in light of a statutory rule governing campground operators, but in any event the rule would appear not to apply here. Explaining further, the Opsahls argue that it further supports the judgments that Castle Rock violated WIS. STAT. § 707.52 in purporting to permanently remove them from the campground without notice of alleged violations of campground rules. Section 707.52(1) places limitations on when a "campground operator" may "terminate a campground contract because of a campground member's breach of rules or regulations or terms or conditions of the campground contract." However, WIS. STAT. ch. 707 defines many of the operative terms in § 707.52(1) to effectively exclude the contracts here, because the contracts covered a single camping season, in contrast to the relatively longer-term contracts that ch. 707 governs. *See* WIS. STAT. § 707.02(6), (25) (defining "campground contract" for purposes of ch. 707 in terms of creating a "time-share easement," which is an interest in property existing "during at least 4 separated periods over at least 4 years").

¶25     Castle Rock also points out that the circuit court made the observation that the owner of a campground "can't have thin skin if people are upset" with the conditions of the campground amenities and the condition of the sites.  It is not clear what conclusion Castle Rock would have this court draw from the circuit court's observation that could support reversal.  Castle Rock's argument appears to boil down to the contention that the court inappropriately second-guessed Wodlarski's decision-making as Castle Rock's owner.  I reject the argument, because the court's comment appears to have been merely a contextual observation to the effect that Wodlarski ejected the campers based on his emotions, and not based on his consideration of relevant contract terms, and there is record evidence to support the court's view.

¶26     Castle Rock contends that the circuit court signaled error by referring to Wodlarski's decision to terminate the contracts as "retaliatory."  Castle Rock argues that the court's use of this term invoked landlord-tenant law, in particular rules prohibiting retaliation by landlords against residential tenants in response to the tenants exercising certain rights.  *See* WIS. STAT. § 704.45 (Retaliatory conduct in residential tenancies prohibited).  Castle Rock contends that campgrounds are not subject to such a rule.[4]  Assuming without deciding that this is a correct statement of law for purposes of these appeals, this does not help Castle Rock.  This is because I interpret the court's use of the word "retaliatory" as merely reflecting the court's view that Wodlarski had an emotion-driven

---

[4] At trial, the campers did not appear to dispute Castle Rock's position that the contracts did not constitute leases subject to the provisions of WIS. STAT. ch. 704.  Further, the circuit court agreed with Castle Rock on this point.

motivation for ejecting the campers, and not a motivation based on the conclusion that the campers had actually violated a rule, including by acting inappropriately.

¶27    Castle Rock states as a broad proposition that, when one party to a contract "decides to stop doing business with the other party," then the second party is free to "retaliat[e]" by doing business with others. Whatever merit this proposition has in other contexts, it is not relevant here. Castle Rock's decision "to stop doing business with" the campers was unilateral; there is no dispute that the campers expressed a desire to return to the campground.

¶28    Turning to the determination of damages, the circuit court here had "broad discretion" on this topic. *See Champion Cos. of Wis., Inc. v. Stafford Dev., LLC*, 2011 WI App 8, ¶11, 331 Wis. 2d 208, 794 N.W.2d 916; *Kersten v. H.C. Prange Co.*, 186 Wis. 2d 49, 59-60, 520 N.W.2d 99 (Ct. App. 1994) ("This court must sustain a damage award if there is any credible evidence that under any reasonable view supports it and removes the issue from the realm of conjecture."). The court here implicitly found that the amounts that the campers paid in fees for the entire season constitute a reasonable approximation of their damages under the circumstances. *See Kersten*, 186 Wis. 2d at 60 ("'Damages for breach of contract need not be ascertainable with absolute exactness or mathematical precision. The evidence is sufficient if it enables the fact-finder to make a fair and reasonable approximation.'" (quoted source omitted)). The camping fees on their face represent the court's estimation of the value that the parties placed on the right to camp at Castle Rock for the 2024 season. *See Peterson v. Cornerstone Prop. Dev., LLC*, 2006 WI App 132, ¶50, 294 Wis. 2d 800, 720 N.W.2d 716 ("under general principles of contract law, '[a]n injured party is entitled to the benefit of his agreement, which is the net gain he would have realized from the contract but

for the failure of the other party to perform'" (quoting ***Thorp Sales Corp. v. Gyuro Grading Co.***, 111 Wis. 2d 431, 438-39, 331 N.W.2d 342 (1983))). Accordingly, this approximated the value that the campers were deprived of here, because Castle Rock purported to terminate the contracts before the campers had stayed at the campground for a single weekend. Castle Rock does not contend that this was an erroneous approach to measuring damages.

¶29 Castle Rock's opposition to the damages apparently rests largely on the fact that the contracts state that Castle Rock would not provide any refunds. But this provision is immaterial. It is true that the campers' complaint framed their damages request in terms of refunding their camping fees, but that was simply one way of characterizing potential damages. What matters are the relevant facts, not any characterization, and the court credited evidence to the effect that the campers intended to return to the campground right up to the point when Castle Rock decided to eject them, terminating the contracts. Under the circumstances, the consequences of Castle Rock terminating the contracts was not to fail to refund camping fees, per se, but instead to deprive the campers of the right to camp at Castle Rock. *See **id.*** (consequential damages for a breach of contract are "'such damages as are the natural and probable consequences of the breach and were within contemplation of the parties when the contract was made'" (quoted source omitted)).

¶30 Castle Rock takes issue with comments by the circuit court suggesting the view that Castle Rock had a duty to mitigate its damages by trying to find other parties to contract for the sites that the campers vacated due to the ejection. But the court made clear that it did not need to address mitigation, and

Castle Rock fails to show how the court's comments bear on whether it was appropriate to award the plaintiffs judgments in the amount of the camping fees.

## CONCLUSION

¶31 For all of these reasons, the judgments of the circuit court are affirmed.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.