# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1566 |
| COMPLETE TITLE: | United Concrete & Construction, Inc.,<br>              Plaintiff-Appellant,<br>     v.<br>Red-D-Mix Concrete, Inc.,<br>              Defendant-Respondent-Petitioner,<br>Nationwide Mutual Insurance Company and Allied<br>Insurance<br>Company,<br>              Defendants-Respondents. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 343 Wis. 2d 679, 819 N.W.2d 563
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 12, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 23, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Outagamie |
| JUDGE: | John A. Des Jardins |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., BRADLEY, CROOKS, J.J., concur.<br>(Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

     For the defendant-respondent-petitioner, there were briefs by *Frank Kowalkowski*, *James Kalny*, and *Davis & Kuelthau, S.C.*, Green Bay, and oral argument by *Frank Kowalkowski*.

     For the plaintiff-appellant, there was a brief by *Valerie J. Revnew* and *Epiphany Law, LLC*, Appleton, and oral argument by *Valerie J. Revnew*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP1566
(L.C. No. 2008CV1595)

STATE OF WISCONSIN      :      IN SUPREME COURT

**United Concrete & Construction, Inc.,**

        **Plaintiff-Appellant,**

  **v.**

**Red-D-Mix Concrete, Inc.,**

        **Defendant-Respondent-Petitioner,**

**Nationwide Mutual Insurance Company and Allied Insurance Company,**

        **Defendants-Respondents.**

**FILED**

**JUL 12, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed in part, reversed in part, and cause remanded with instructions.*

¶1 MICHAEL J. GABLEMAN, J.   There are many vagaries in the law.   However, we deal here with the concrete. Specifically, certain batches of concrete that United Concrete and Construction, Inc. (United) purchased from Red-D-Mix Concrete, Inc. (Red-D-Mix) and now complains were defective. United used the concrete to pour outdoor installations (known in

the industry as "flatwork") at various properties. After problems arose with the installations, United obtained assignments from a number of the property owners,[1] who transferred their putative right to sue Red-D-Mix over to United. United then exercised that right, filing a complaint in tort and contract, in both its own name and in that of the assignees, and alleging violations of Wis. Stat. § 100.18 (2011-12).[2] The circuit court[3] granted summary judgment for Red-D-Mix, on the grounds that United's claims through the property owners and its tort claims were barred by the economic loss doctrine, its § 100.18 claim could not proceed because the allegedly actionable statements constituted puffery and because United was not a member of the public within the meaning of the statute, and damages had been insufficiently established to support the remaining claims. Disagreeing entirely with the trial judge, the court of appeals reversed on all grounds.

¶2   As shown below, the court of appeals was in the main correct, but reached the wrong result in one respect and was overbroad or imprecise in others. To wit, the court of appeals properly reversed the circuit court's ruling regarding puffery,

---

[1] Following the court of appeals and the parties, we will also occasionally call the property owners "homeowners."

[2] All subsequent citations to the Wisconsin statutes are to the 2011-12 edition. None of the provisions relevant to the instant case have changed in any pertinent respect since the underlying conduct giving rise to the dispute occurred.

[3] The Honorable John A. Des Jardins presiding.

2

though it incorrectly determined that puffery is always a question of fact for the jury. On the next issue, the court of appeals erred in its determination that the claims United asserted through the assignments were valid, when, with two exceptions,[4] the economic loss doctrine barred the homeowners from suing Red-D-Mix and thus barred United from suing in their name. Finally, the court of appeals rightly reversed the circuit court for finding all the asserted damages speculative, though in doing so it prematurely interpreted the legal significance of the assignments. Its language construing the assignments is overruled. See Griebler v. Doughboy Recreational, Inc., 160 Wis. 2d 547, 556, 466 N.W.2d 897 (1991) (overruling specific language from the court of appeals decision under review).

¶3 When the case is returned to it, the circuit court is directed to dismiss the claims asserted through the assignments, and to allow the remaining claims to proceed to trial. Accordingly, we affirm in part, reverse in part, and remand with instructions.

## I. FACTUAL BACKGROUND

¶4 Because this case is here on summary judgment, we recite the facts in the light most favorable to United, the party opposing summary judgment, and accept as true its

---

[4] See infra note 19.

allegations.[5]  Kraemer Bros., Inc. v. U.S. Fire Ins. Co., 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979).

¶5  From 2002 to 2004, Red-D-Mix supplied United with concrete,[6] which United then poured at various job sites.  During that time, United complained to Red-D-Mix that its product was generating excessive "bleed water,"[7] thereby damaging several of United's projects, including a number of basements.  When the problem was not resolved to United's satisfaction, it severed its business relationship with Red-D-Mix.

¶6  In 2007, unhappy with price increases at its new supplier, M&M Concrete, United contacted Red-D-Mix to inquire into the possibility of restoring the relationship.  John Clark, a salesman for Red-D-Mix who had not been with the company during the earlier difficulties with bleed water, came to United's offices at its request.  There, he met with Timothy Hippert, the president of United, and Kevin Kluess, United's foreman.  Hippert and Kluess sought assurances from Clark that the problems with the concrete had been resolved and that Red-D-

---

[5] For this reason, we will not insert an ungainly "allegedly" before every allegation.  We do not thereby imply the truth of any factual assertion.

[6] The briefs and court of appeals opinion refer only to concrete, not cement, so we do the same.

[7] As explained in the summary judgment materials, "bleed water" is essentially excess water that seeps out of concrete after it has been poured and rests on the surface.  There was testimony taken at depositions that such water can make the upper layers of the concrete weaker and more likely to prematurely degenerate.

Mix could now guarantee a high-quality, durable product. When Clark delivered those assurances, the two companies entered into a new contract.

¶7 The good will was short lived. Customers soon began alerting United to defects in their outdoor concrete installations, such as pitting, discoloration, crumbling, and spalling.[8] In response, United asked property owners to sign an assignment of rights. The assignment indicated that the signatory "desires to transfer any and all rights they [sic] may have arising from the supply of defective concrete for the purpose of prosecution and/or otherwise resolving the claims as seen fit by" United. It informed the reader that "the legal effect of signing this Assignment fully and forever extinguishes any and all claims which he/she has or might have had against any company for the supply of defective concrete for use in flatwork performed by a third-party as of the date of execution except as expressly reserved." The assignment then concluded, "Assignor conveys, assigns, transfers and sets over unto Assignee, all rights to any causes of action and/or claims of any nature, whether known or unknown, in any way relating to the outstanding claims that exist in his/her favor . . . ." Ultimately, 22 property owners acquiesced to United's request. Of these, 20 did so without any conditions. Of the other two, one, the Michaels, insisted on a reservation of rights in

---

[8] To spall is to "[b]reak off . . . in fragments; splinter, chip." Shorter Oxford English Dictionary 2935 (6th ed. 2007).

return. The other, the Beyers, sued United in small claims court and agreed to the assignment as part of a stipulated dismissal, in exchange for United promising to either repair the damaged concrete or pay for its replacement.

## II. PROCEDURAL HISTORY

¶8 Its assignments in hand, United brought suit in its own name and through the assignments against Red-D-Mix in Outagamie County Circuit Court, demanding damages, in its third and final amended complaint, for breach of contract, breach of express warranty, breach of implied warranty, false representations under Wis. Stat. § 100.18, negligence, indemnification, and contribution.[9] Red-D-Mix moved for summary judgment, arguing that damages were speculative because United had not yet performed any repairs. The motion further argued that the negligence claims were barred under the economic loss doctrine, as no harm befell any individuals or property other than the concrete itself, aside from two minor incidents involving grass growing in a driveway and abnormal wear and tear on a floor. With respect to the assigned claims as a whole, Red-D-Mix contended that they should all be dismissed because, under our decision in Linden v. Cascade Stone Co., Inc., 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, the owners could sue only United, not Red-D-Mix, and they therefore had nothing to assign. Lastly, Red-D-Mix submitted, in its motion for summary judgment,

---

[9] Red-D-Mix filed a counterclaim, alleging that United was itself negligent in various actions it took with respect to the concrete. The counterclaim is not before us.

that United's Wis. Stat. § 100.18 claim was based on puffery and that United was not a "member of the public" protected by the statute, and thus its claim failed as a matter of law on both grounds.[10]

¶9   The circuit court more or less embraced in full Red-D-Mix's view of the case, holding that the claims made through the assignments and all of the tort claims were prohibited by the economic loss doctrine,[11] that the representations forming the basis for the Wis. Stat. § 100.18 claim were puffery and were being improperly brought by a non-member of the public, and that United had not alleged sufficient damages to proceed to trial.

¶10  Reversing, the court of appeals took exception to the circuit court on each point. <u>United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.</u>, No. 2011AP1566, unpublished slip op. (Wis. Ct. App. June 13, 2012).  The court first concluded that damages were not overly speculative for summary judgment purposes because United "could present sufficient evidence to enable a reasonable jury to award damages in an amount supported

---

[10] Red-D-Mix also argued to the circuit court that the assignments were unsupported by consideration and that no warranties were given.  It does not raise the former, and mentions the latter only in a passing footnote without citation or elaboration.  We will therefore address neither. <u>See</u> <u>State v. Gracia</u>, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 ("[W]e do not usually address undeveloped arguments.") (citation omitted).  Extensive litigation regarding various insurance issues also took place at the circuit court.  Those issues have not been presented for our review.

[11] United did not appeal the dismissal of its tort claims so we do not discuss them further.

by the evidence." Id., ¶10. It then determined that Linden did not foreclose the suit, reasoning that "[w]hile the homeowners may have had no rights against Red-D-Mix to assign, the Assignments neither strip from United its right to sue Red-D-Mix nor protect United from [the] homeowners' potential breach-of-contract claims." Id., ¶11. Turning to the Wis. Stat. § 100.18 claim, the court of appeals considered the issue unfit for summary judgment disposal, as questions remained as to "what role, if any, Clark's being a 'new' salesperson should play in his credibility, what he said, and whether it constituted 'puffing' . . . ." Id., ¶14. Finally, the panel also instructed the circuit court that the issue of whether United was a member of the public in the sense contemplated by § 100.18 "presents a question of fact." Id., ¶16 (citation omitted). Elaborating, the court explained that "[a] jury reasonably could find that a particular relationship existed between United and Red-D-Mix because of their past dealings; it just as reasonably could find that United was a member of 'the public' when Red-D-Mix, through Clark, solicited United's business anew." Id. As such, the matter was properly submitted to the trier of fact, not the court on summary judgment. Id.

¶11 We granted Red-D-Mix's petition for review. Finding no error in the court of appeals' decision to afford United a trial, but finding several errors in its analysis, we affirm in part, reverse in part, and remand with instructions.

## III. STANDARD OF REVIEW

8

¶12 As noted, we review a summary judgment order. In such instances, we approach the issues independently of the lower courts, while applying the same standards they did. Admanco, Inc. v. 700 Stanton Drive, LLC, 2010 WI 76, ¶14, 326 Wis. 2d 586, 786 N.W.2d 759. Those standards require us to answer whether any genuine issues of material fact are in dispute rendering a trial necessary. Id., ¶28. In so doing, we examine the summary judgment record while considering the facts in the light most favorable to the party opposing summary judgment——here, United——and assuming the truth of its allegations. Kraemer Bros., Inc., 89 Wis. 2d at 567. If there is but a single reasonable inference to be drawn from the undisputed facts, and if that inference favors the movant, summary judgment is proper. Grams v. Boss, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980), abrogated on other grounds by Olstad v. Microsoft Corp., 2005 WI 121, 284 Wis. 2d 224, 700 N.W.2d 139.

## IV. DISCUSSION

¶13 Red-D-Mix challenges the court of appeals decision on four main grounds: 1) that United was not a member of the public vis-à-vis Red-D-Mix and consequently cannot bring suit pursuant to Wis. Stat. § 100.18; 2) that the misrepresentations were mere puffery and therefore not prohibited by that statute; 3) that some claims are barred by the economic loss doctrine; and 4) that all claims are foreclosed by the speculativeness of the requested damages. We hold that the first issue was not properly preserved by Red-D-Mix in its petition for review and accordingly decline to address it. As to the second issue, we

9

conclude that the truth or falsity of the statements in question was ascertainable, and thus the § 100.18 claim should have been submitted to a trier of fact. With respect to the third issue, we agree with Red-D-Mix that United cannot file suit in the homeowners' names because they have no cause of action under the economic loss doctrine. On the final issue, we hold that the speculativeness of damages should not have prompted the grant of summary judgment, but we overrule language from the court of appeals' opinion prematurely construing the legal significance of the assignments.

### A. UNITED'S WIS. STAT. § 100.18 CLAIM SURVIVES SUMMARY JUDGMENT

¶14 Red-D-Mix asserts that summary judgment was correctly granted on the Wis. Stat. § 100.18 claim because United was not a member of the public, as required by the provision, and because the misrepresentations here were mere puffery as a matter of law. We do not reach the first argument, as Red-D-Mix failed to raise it in its petition for review, and we reject the second one, as the statements do not represent puffery.

#### 1. Red-D-Mix Failed to Preserve Its Argument That United Is Not a Member of the Public

¶15 Wisconsin Stat. § 100.18 creates civil liability for certain kinds of fraudulent representations. In essence, as relevant here, it exposes a corporation to lawsuits for damages if it uses untrue statements to sell its wares to the public. To make out a claim under the statute, therefore, a plaintiff must show, inter alia, "that the defendant made a representation

10

_to the public_ with the intent to induce an obligation . . . ." _State v. Abbott Labs._, 2012 WI 62, ¶37, 341 Wis. 2d 510, 816 N.W.2d 145 (emphasis added) (citation omitted); _see also_ _K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc._, 2007 WI 70, ¶20, 301 Wis. 2d 109, 732 N.W.2d 792 (collecting cases construing the "member of the public" language in § 100.18).

¶16 By supreme court rule, "[i]f a petition [for review] is granted, the parties cannot raise or argue issues not set forth in the petition unless ordered otherwise by the" court. Wis. Stat. § (Rule) 809.62(6). In its petition for review, Red-D-Mix framed its issues as, first, whether it is a "question of law or a question of fact whether a statement made by a seller of a product is sufficient to support a misrepresentation claim or is instead inactionable puffery" and, second, whether it is permissible for "a contractor [to] circumvent . . . _Linden_ . . . and initiate a cause of action it admits belongs to its customers . . . ." It said nothing in either that section or its discussion section about being a member of the public. Indeed, the only mention of that issue in the petition for review appears in its recitation of the procedural history. In granting the petition, we did not instruct the parties to brief or argue any additional issues. Quite to the contrary, we specifically informed Red-D-Mix that it was not to "raise or argue issues not set forth in the petition for review," and cited to § 809.26(6).

¶17 Red-D-Mix now asks us to forgive the omission because the "member of the public" issue "is an essential element of

11

[its] [Wis. Stat.] § 100.18 claim," which can be reduced to the proposition "that when the facts are undisputed, the Court, as a matter of law, should decide if a § 100.18 claim must be dismissed." As a result, Red-D-Mix says, "the issue of whether the statement was made to the public is before this Court along with every other element of misrepresentation that United saw fit to address." We are unpersuaded. The two questions are manifestly discrete. The statements could be puffery and not made to a member of the public; they could be made to a member of the public but not puffery; they could be neither or both. The puffery issue is raised in the petition for review and discussed at length. The member of the public issue is completely absent. To adopt Red-D-Mix's interpretation of Wis. Stat. § (Rule) 809.62(6) would be to render the provision meaningless. A party could then guarantee our review of any issue by simply mentioning the statute associated with a certain claim and nakedly asserting that the lower court erred in its ruling on that statute, even when there were numerous unrelated issues stemming from the same statute. Such a construction requires this court to do all the labor reasonably expected of counsel, and we do not accept it. Cf. Johnson v. Blackburn, 227 Wis. 2d 249, ¶29 n.11, 595 N.W.2d 676 (1999) (declining to address an issue not raised in the petition for review, even though the unraised issue related to the same statute as the raised issue).

¶18 Red-D-Mix chose to exclude the question of whether United was a member of the public from the petition for review,

12

and we honor that choice. The court of appeals' disposition of the matter stands.

## 2. The Contested Statements Were Not Puffery

¶19 The circuit court thought the comments the Red-D-Mix salesman, Clark, made at his meeting with United were puffery as a matter of law and as a result could not support a Wis. Stat. § 100.18 claim. Conversely, the court of appeals thought it could not be determined whether they were puffery on summary judgment at all. We take a third route: the remarks were not puffery, but that conclusion could and should have been reached by the trial judge during the summary judgment proceedings.

### a) Clarifying the Misrepresentations at Issue

¶20 Before getting into the merits of the dispute, it is important to clarify exactly which statements are at issue. Beginning at the circuit court, Red-D-Mix has consistently taken the position that the misrepresentation consisted only of Clark's statements to the effect that Red-D-Mix's concrete was "good and durable." Notably, Red-D-Mix takes the position that the court should not factor into its puffery analysis the fact that Clark, in addition to the more general endorsement of the product, specifically reassured United that its previous concerns with the concrete had been addressed and those particular problems——i.e., the issues flowing from excessive bleed water——were no longer occurring. In support, Red-D-Mix notes that United offered no averments in its third and final amended complaint regarding an exchange at the meeting over the previous problems United had encountered with Red-D-Mix's

13

product.   Like the circuit court and the court of appeals, we take a broader view than does Red-D-Mix.

¶21 As a notice pleading state, Wisconsin law requires only that a complaint "set forth the basic facts giving rise to the claims." Apple Hill Farms Dev., LLP v. Price, 2012 WI App 69, ¶17, 342 Wis. 2d 162, 816 N.W.2d 914 (citing Wis. Stat. § 802.02(1)(a)).   The purpose of a complaint in a notice pleading jurisdiction is to provide "sufficient detail" such "that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery." Midway Motor Lodge of Brookfield v. Hartford Ins. Grp., 226 Wis. 2d 23, 35, 593 N.W.2d 852 (Ct. App. 1999) (internal quotation marks and citation omitted).

¶22 United satisfied that standard here.   While it is true that United did not characterize Clark in its complaint as speaking specifically to the bleed water problems it had in the past, it did alert Red-D-Mix to its accusation that Clark had misrepresented the quality of his company's concrete at the 2007 meeting.   By the time summary judgment pleadings were filed, Red-D-Mix was well aware of United's reliance upon Clark's purported declaration that the bleed water problems had been rectified.   Indeed, in Red-D-Mix's own motion for summary judgment, it attached excerpts from a deposition with Hippert, the president of United, at which he made abundantly clear that he recalled seeking at the meeting "some guarantee from them that they had solved that problem" with the bleed water and that in response Clark "assured us that they had cured their

14

problems . . . ." Unsurprisingly, in light of that transcript, the attorneys debated the significance of the assurance at length during the summary judgment hearing, and both the circuit court and court of appeals took it into account. Red-D-Mix had more than adequate notice of the statements to prepare its defense and respond to United's case, both of which it did thoroughly. There is no defect in the pleadings and we incorporate the statements into the allegations in our puffery analysis.

### b) The Statements Were Not Puffery

¶23 Having resolved that threshold issue, we will now demonstrate why Clark's statements were not puffery, and why the circuit court should have held as much at summary judgment.

¶24 We begin with some brief background. The concept of puffery is as old as our legal system. See Stefan J. Padfield, Is Puffery Material to Investors? Maybe We Should Ask Them, 10 U. Pa. J. Bus. & Emp. L. 339, 350-53 (2008) (tracing the roots of puffery to the ancient doctrine of caveat emptor, or "buyer beware"). An early American case succinctly summarized its underlying rationale: "[t]he law recognizes the fact that men will naturally overstate the value and qualities of the articles which they have to sell. All men know this, and a buyer has no right to rely upon such statements." Kimball v. Bangs, 11 N.E. 113, 114 (Mass. 1887). Some years later, Judge Learned Hand elaborated, categorizing "some kinds of talk" as that "which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be

15

so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it." Vulcan Metals Co. v. Simmons Mfg. Co., 248 F. 853, 856 (2d Cir. 1918).

¶25 Consistent with other jurisdictions, Wisconsin has adopted these same essential principles into its common law. In our state, a salesperson engages in puffery when he gives voice to "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." State v. Am. TV & Appliance of Madison, Inc., 146 Wis. 2d 292, 301-02, 430 N.W.2d 709 (1988)(internal quotation marks and citation omitted). Exaggerations of this sort do not subject the speaker to liability under Wis. Stat. § 100.18 because they convey only the seller's opinion and are "not capable of being substantiated or refuted . . . ." Tietsworth v. Harley-Davidson, Inc., 2004 WI 32, ¶44, 270 Wis. 2d 146, 677 N.W.2d 233 (internal quotation marks and citation omitted).

¶26 Clark's promise to United that Red-D-Mix had remedied the bleed water issues cannot reasonably be regarded as puffery under the aforementioned definitions. Excessive bleed water is a technical problem, with a technical definition and a technical solution. To gather information on this technical issue, both parties retained experts who undertook extensive investigations into the precise composition of the concrete used in the relevant properties, and then submitted elaborate reports on that composition. There is nothing in the record to suggest that a trier of fact, properly instructed and assisted by expert

16

testimony, would be unable to ascertain whether Red-D-Mix used an acceptable combination of ingredients in its concrete or did not. Cf. Fireman's Fund Ins. Co. v. United States, 92 Fed. Cl. 598, 627, 657 (2010) (discussing excessive bleed water in concrete amongst other technical problems occurring as a result of the particular composition of concrete). In fact, we would be hard pressed to invent a hypothetical statement less similar to the vague and amorphous hype typically classified as puffery than a specific reference to a specific problem in a relationship between two specific parties in a highly specialized industry. See, e.g., Tietsworth, 270 Wis. 2d 146, ¶43 (classifying as puffery claims that a product was "a masterpiece" and of "premium quality"); Am. TV, 146 Wis. 2d at 299 (judging the endorsement of a product as "the finest" to be puffery); Consol. Papers, Inc. v. Dorr-Oliver, Inc., 153 Wis. 2d 589, 594, 451 N.W.2d 456 (Ct. App. 1989) (explaining why an advertisement promising that a product had a "long equipment life" was puffery).

¶27 To attack this straightforward application of well-established law, Red-D-Mix emphasizes two facts: 1) that the salesman did not work at the company during the earlier problems; and 2) that the earlier problems related to basements

17

and not outdoor projects. Neither has any bearing on the puffery inquiry.[12]

¶28 To explain, the reason that a valid defense of puffery defeats a Wis. Stat. § 100.18 suit is that the defense undermines part of the statute's first element: that the defendant related a misrepresentation of <u>fact</u>. <u>Am. TV</u>, 146 Wis. 2d at 302. This is so because a salesperson who simply declares that his product is the "best" or the like, is not representing a fact at all, let alone misrepresenting one. Rather, he is merely delivering a nebulous, abstract, highly <u>generalized</u> pitch for his wares. By contrast, when Clark told United that the problem with the bleed water had been fixed, he was very much making a <u>specific</u>, factual statement. That he may not have been familiar with the problems prior to the conversation, or had any idea whether they had been addressed or not, does not transform the factual statement into puffery, for

---

[12] Red-D-Mix also insists that the statements cannot support a Wis. Stat. § 100.18 action because they looked only to the future, not the past. Not so. Clark told United that a specific problem that had occurred historically was no longer an issue. Whether Red-D-Mix fixed a defect is a factual question about the past, not the future. To hold otherwise would be to permit suppliers to make whatever outlandish claims they could dream up to move their products without fear of lawsuit, because every such claim could be categorized as one relating to the future sale of the product and not its present condition.

it does not render this highly specific comment any more general than it would have been otherwise.[13]

¶29 Our conclusion is bolstered by the absurd and pernicious consequences that would follow if we gave our stamp of approval to Red-D-Mix's theory. To reiterate Judge Hand's explication, salespeople should not be punished for trying to improve their sales with claims "which no sensible man takes seriously, and if he does he suffers from his credulity." Vulcan Metals Co., 248 F. at 856. It is surely not so naïve, though, for a potential customer to expect a salesperson to speak the truth when he represents, on behalf of his company, that a specific problem that had cropped up in the past between the same two parties, relating to the same product, had been solved. Cf. Radford v. J.J.B. Enters., Ltd., 163 Wis. 2d 534, 544-45, 472 N.W.2d 790 (Ct. App. 1991) (holding that a boat-owner did not engage in puffery when he assured the individual purchasing the boat from him that its hull was sound and all dry rot had been removed). A world in which companies are relieved of liability when their representatives make statements of the sort Clark made is a world in which companies have every

---

[13] United has also contended that Red-D-Mix conveyed false information in violation of Wis. Stat. § 100.18 when Clark told Hippert and Kluess that it was using a new plant and the same supplier as M&M Concrete, the company United turned to after it ended its earlier relationship with Red-D-Mix. Our analysis focuses on the specific promise that the bleed water problem had been remedied, as that promise lies at the heart of the case. These other closely related statements are not puffery for the same reasons.

incentive to keep their salespeople in the dark about the flaws in their products, and salespeople have every incentive to confidently deliver as many unfounded promises as they can, while the "sensible man" suffers the consequences. That is not the world common law courts envisioned in developing the concept of puffery.

¶30 We need not dwell long on dispatching Red-D-Mix's other line of attack: that the earlier problems involved basements while the defects giving rise to the present litigation involved outdoor projects. For one thing, this distinction, whatever its truth, does not go towards puffery. Even if Clark did mean only that the concrete was no longer excessively bleeding in such a way as to damage basements, the truth or falsity of that statement is just as capable of ascertainment as the truth or falsity of a more general assurance that the concrete was not bleeding overmuch, indoors or outdoors. And, in any event, the summary judgment materials made clear beyond doubt that United believed Clark was indeed making that more general assurance, and that the assurance was proven untrue by the deterioration of the concrete Red-D-Mix supplied. In the excerpted transcript of Hippert's deposition that Red-D-Mix attached to its motion for summary judgment, he characterized the earlier problem as the inability to "get a concrete that we could pour and finish without it bleeding substantially" and then elaborated that "in general, it's bleeding, but our primary focus was on basements." Such testimony makes plain that United believed the earlier bleeding

problem was the same as the one afflicting the later deliveries of concrete, and that those later problems contradicted Clark's promise.   Incontrovertibly, then, Red-D-Mix had the opportunity to rebut the claim before the circuit court, and this argument is meritless.   The statements were not puffery, and United therefore had a colorable claim under Wis. Stat. § 100.18.[14]

c) Puffery Is Not Always a Question of Fact, Nor One of Law

¶31 One final question on the subject remains, namely, whether puffery is a matter for the judge at summary judgment or the trier of fact at trial.   The answer is dictated by our foregoing analysis: it depends.

¶32 Below, the court of appeals made the blanket assertion that "[w]hether a statement is puffery is a question of fact." United Concrete, No. 2011AP1566, ¶13 (citation omitted).   Unlike the panel, we do not understand the law to accord puffery any unique status in summary judgment proceedings.   Rather, like most other issues, it is best decided by a court on summary judgment when there are no genuine issues of material fact in dispute and when, viewing the record in the light most favorable to the party opposing summary judgment, the single reasonable inference to be drawn from the facts favors the movant.

---

[14] Red-D-Mix argues in the alternative that if the statements were not puffery, they were inactionable on the grounds they constituted opinion.   For the same reasons that we reject its puffery argument, we reject its opinion argument. Radford v. J.J.B. Enters., Ltd., 163 Wis. 2d 534, 544-45, 472 N.W.2d 790 (Ct. App. 1991) (disposing of opinion and puffery issues simultaneously and with identical reasoning).

Admanco, Inc., 326 Wis. 2d 586, ¶28; Grams, 97 Wis. 2d at 338. Where this cannot be said, as will often be the case, it should go to the jury.

¶33 The benefits of our approach are readily apparent. Most obviously, it conforms to clear, well-established, universal summary judgment procedure, with which our circuit court judges are intimately familiar and long accustomed to applying. Cf. Wis. Stat. § 801.01(2) (providing that summary judgment is allowed "in circuit courts of this state in all civil actions and special pleadings . . . except where different procedure is prescribed by statute or rule.").

¶34 In the same vein, it simply does not make sense to assume that puffery is, always and everywhere, a matter for the jury. When there is no reasonable interpretation of the record that would evidence puffery, it wastes the taxpayers' and the parties' time and money, not to mention scant judicial resources, to assemble a jury and submit to it the question. Cf. Yahnke v. Carson, 2000 WI 74, ¶20, 236 Wis. 2d 257, 613 N.W.2d 102 (noting that "the purposes of summary judgment procedure in this state" are to "avoid[] unnecessary trials and conserv[e] the resources of the courts and litigants alike").

¶35 The dispute at hand proves our point. Unless the meeting between Clark and United took place on "opposite day,"[15]

---

[15] "'Opposite Day' is a fictitious holiday, usually celebrated by school-aged children, in which statements on that day are intentionally false, but taken to mean the opposite by listeners aware that the holiday is being celebrated." Attorney Grievance Comm'n of Md. v. Siskind, 930 A.2d 328, 343 n.9 (Md. 2007) (citations omitted).

22

there is no defensible view of the record to support the conclusion that Clark's statements constituted puffery. For purposes of summary judgment, Red-D-Mix assumed that Clark promised the previous issues with bleed water had been resolved. In ruling on the motion, then, the circuit court had no need to wonder whether the statements had actually been made, nor to consider the credibility of Red-D-Mix's salesman versus the credibility of United's employees or any other matter within the sole province of the trier of fact. See, e.g., Fischer v. Cleveland Punch & Shear Works Co., 91 Wis. 2d 85, 92, 280 N.W.2d 280 (1979) ("The credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment . . . .") (citation omitted). The judge had only to ask whether the truth or falsity of the statements was ascertainable. For the reasons we surveyed above, it was well within his competence to find, as a legal matter, that it was.

¶36 To support its contrary view, the court of appeals relied upon a lone footnote from one of its previous opinions. See Lambert v. Hein, 218 Wis. 2d 712, 724 n.4, 582 N.W.2d 84 (Ct. App. 1998). Its reliance was misplaced. In the cited footnote, the court of appeals held that the trial judge correctly let the jury consider whether the phrase "quality construction," as used in the real estate industry, was puffery. Id. It further held that "whether 'puffery' may be construed as a warranty depends on the objective context in which the statement is made" and that in the case at bar "competing affidavits" precluded the granting of summary judgment. Id.

23

Neither holding is in conflict with our own today. The latter conclusion——that puffery may also be a warranty in certain contexts——does not speak to whether a statement is puffing in the first place. The former conclusion——that whether a particular phrase in a particular industry constituted puffery was rightly determined by the jury——is in perfect harmony with our own position that the question of puffery is sometimes appropriate for disposition at summary judgment, and sometimes not. Lambert does not impose an absolute bar on circuit courts dealing with puffery on motions for summary judgment, and the court of appeals below should not have expanded its narrow, fact-specific holding as it did.

¶37 The approach we take here is consistent with the well-reasoned precedent of other jurisdictions. A number of courts have refrained from drawing a bright line around puffery in terms of whether it presents a question of fact or of law, recognizing, as we do, that while it is usually a question of fact it can at times be a question of law, and that courts should apply the usual summary judgment standard to figure out which label fits more closely in a given case. See Donald Braman et al., Some Realism About Punishment Naturalism, 77 U. Chi. L. Rev. 1531, 1571 n.146 (2010) ("Many of the issues in puffery . . . are often resolved as matters of law rather than fact.") (emphasis added); Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 723 (D.N.J. 2011) (observing that puffery "is normally a question of fact for the jury") (emphasis added) (internal quotation marks and citation omitted); Redmac, Inc. v.

24

_Computerland of Peoria_, 489 N.E.2d 380, 382 (Ill. Ct. App. 1986) ("Whether the issue [of puffery] is one of law or fact may be debatable; however, it is generally considered a question of fact . . . .") (emphasis added) (citations omitted). A substantial majority of decisions resolving the puffery question do not purport to apply a blanket rule; they simply determine, with reference to the specific facts and allegations and the general rules of summary judgment, whether the question can be resolved as a matter of law by the court or instead requires the consideration of the jury. See, e.g., _Park Rise Homeowners Ass'n v. Resource Const. Co._, 155 P.3d 427, 435 (Colo. Ct. App. 2006) ("Turning to the phrase 'quality construction,' we reject the . . . argument that, as a matter of law, the phrase cannot be treated as puffery . . . .") (emphasis added); _In re Level 3 Commc'ns, Inc. Sec. Litig._, 667 F.3d 1331, 1340 (10th Cir. 2012) ("Many of the statements in plaintiff's complaint are, as a matter of law, nothing more than puffery.") (emphasis added).

¶38 Though such decisions do not explicitly endorse our conclusion that puffery is ordinarily a matter of fact, but sometimes one of law, they follow the same rule we set forth here. For rather than treating puffery as either always or never a question of fact, they simply apply the time-tested summary judgment standards to the specific motions under

25

review.[16]   In sum, the circuit court should have held as a matter of law that the remark was not puffery for purposes of summary judgment, and on remand it is instructed to do so.[17]

### B. UNITED'S REMAINING CLAIMS SURVIVE SUMMARY JUDGMENT IN PART

¶39  Having disposed of United's Wis. Stat. § 100.18 claim, we are left with the balance of its complaint.  Recall that in addition to § 100.18, United relied upon theories of breach of contract, breach of express warranty, breach of implied warranty, indemnification, and contribution.  These claims were brought both in its own name and through its assignments from the homeowners.  The circuit court found all of them failed at summary judgment on account of either the economic loss doctrine, the speculativeness of the requested damages, or both.  On appeal, the court of appeals reached the opposite conclusion

---

[16] To the extent other jurisdictions do employ language implying a more categorical distinction, we respectfully disagree with them for the reasons stated.  See, e.g., Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved" without the jury's involvement) (internal quotation marks and citation omitted).

[17] Our determination that the statements were not puffery for summary judgment purposes does not mean that United automatically prevails on its Wis. Stat. § 100.18 claim.  That determination will be made by the jury, and the parties are still entitled to submit evidence to the jury regarding whether the statements were actually made, whether they constituted misrepresentation under the statute, and so on.

26

on each point. Both courts were partly correct and partly incorrect, compelling us to affirm in part and reverse in part.

1. United's Claims Through the Assignments are Impermissible

¶40 Before explaining why the claims United asserted through the assignments are impermissible, we pause to rebut the concurrence's unfounded and unshared assertion that no such claims exist.

¶41 To be sure, the complaint did not explicitly indicate that United was suing Red-D-Mix through the assignments in the homeowners' name. Nevertheless, that has been the uncontested view of everyone involved in the case from its inception to the present day. In the circuit court, both parties proceeded with the understanding that United was suing both in its own name and that of the homeowners. The circuit court itself memorialized that understanding in its summary judgment order, dismissing "all claims asserted by United . . . through the assignments from the property owners . . . ." (Emphasis added.) All the briefs at the court of appeals refer to claims being filed through the assignments, as does the court of appeals' opinion and the petition for review. Neither party denies at this late date, nor did they ever, that United filed claims through the assignments in the homeowners' name.

¶42 Alone among every attorney or judge who has ever participated in this case, from its commencement to today, Chief Justice Abrahamson and the two justices joining her in the concurrence, believe United did not sue in the homeowners' name in addition to its own. Contrary to their suggestion, we are

27

not here adopting "Red-D-Mix's mistaken depiction of the complaint," concurrence, ¶68, we are adopting the depiction shared by the attorney who drafted and filed the complaint, the attorney who responded to it, the circuit court that ruled on it, and the three judges on the court of appeals panel who heard the case before us. Perhaps the most definitive statement on the matter comes from the lawyer who has represented United throughout these proceedings, who wrote in her response to Red-D-Mix's motion for summary judgment that her client was "asserting causes of action in its own name <u>as well as on behalf of the property owners</u> as alternative theories of recovery." (Emphasis added.) This unequivocal sentence was penned by the same person who signed the complaint itself. It is difficult to comprehend why the concurring justices believe they understand the nature of the complaint better than its author.

¶43 The concurrence's unexplained assertions notwithstanding, we do not believe the circuit court or parties will have to guess as to which claims were filed in the homeowners' name, given that all of them have repeatedly referred to those claims throughout the litigation, including the circuit court in the very order the concurrence paraphrases. <u>See</u> <u>id.</u>, ¶65 (noting that the circuit court summary judgment order dismissed "claims asserted through the assignments from the property owners . . . ."). The concurrence thinks we should be more "precise in telling the circuit court which parts of the complaint it should strike." <u>Id.</u>, ¶70. We do not share its doubts over the circuit court's abilities, or think any more

28

precision is required, as it _already_ dismissed the claims asserted through the assignments and thus presumably knows what those claims are.

¶44 In profoundly misleading fashion, the concurrence suggests that United agrees that the assignments are a "red herring" in the same sense that the concurrence uses that term. _Id._, ¶66. United calls the assignments a "red herring" in its brief here with respect to its argument on damages, and the term was employed in the same context at oral argument. As shown below, we agree with United on that point. Neither United nor anyone else, aside from the concurrence, has ever contended that the assignments are a "red herring" in the sense that United did not sue through them. Everyone else has taken the exact opposite position at every stage of the litigation.

¶45 The concurrence helpfully attaches the complaint. We might just as easily attach the numerous documents making abundantly clear how novel the concurrence's interpretation of that complaint is. To name just a few of these documents, there is United's brief opposing summary judgment, the circuit court order, the briefs at the court of appeals, the court of appeals' opinion, and the petition for review. Trees should not have to die in order for us to substantiate such an obvious and uncontested point, so we decline to add any appendices of our own.

¶46 Returning from the concurrence's imagined version of the case to the actual dispute, consider again the court of appeals opinion. In reversing the trial judge, the court of

29

appeals' entire analysis of <u>Linden</u> occupies two sentences, quoted here in full:

> The trial court concluded that the homeowners could not sue Red-D-Mix on their own, and so had no rights to assign, because a property owner cannot sue a subcontractor directly. See <u>Linden</u>, 283 Wis. 2d 606, ¶¶17, 32. While the homeowners may have had no rights against Red-D-Mix to assign, the Assignments neither strip from United its right to sue Red-D-Mix nor protect United from [the] homeowners' potential breach-of-contract claims.

<u>United Concrete</u>, No. 2011AP1566, ¶11. This is a rather confusing train of thought. The court of appeals accurately sums up the trial judge's reasoning, but then proceeds to ignore his conclusion. If the circuit court was in fact correct that the homeowners cannot sue Red-D-Mix, rendering the assignments nullities, then summary judgment was in fact properly granted on the claims United brought through the assignments. Rather than resolving that issue, the court of appeals decided instead to address only the claims in United's own name and the potential claims by the homeowners against United. In other words, the "may" in the paragraph quoted above leaves a crucial question unanswered, and creates needless uncertainty on remand.

¶47 <u>Linden</u> answers the question definitively. There, we held that the economic loss doctrine[18] prevents a homeowner from

---

[18] The economic loss doctrine, as interpreted by <u>Linden v. Cascade Stone Co., Inc.</u>, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, was raised and fully briefed at the court of appeals, and discussed by that court, and it was raised in the petition for review and fully briefed here. It is properly before us.

suing a subcontractor in tort for purely economic loss.  Linden, 283 Wis. 2d 606, ¶¶26-31.  Expounding, we determined that a tort suit does not lie "when . . . the defective product is a component part of an integrated structure or finished product" and the damage is solely "to an integrated product, which results in only economic loss," rather than physical harm or personal injury.  Id., ¶28 (internal quotation marks and citation omitted).  To hold otherwise, we reasoned, "would require a finding of property damage in virtually every case in which" the only harm that occurs is to the product itself, "and would prevent contractual rules from serving their legitimate function in governing commercial transactions."  Id., ¶27 (internal quotation marks and citation omitted).

¶48 The claims United asserted against Red-D-Mix through the assignments squarely fit within the class of lawsuits governed by Linden.  United had a contract with Red-D-Mix, and contracts with the homeowners.  No contract existed between Red-D-Mix and the homeowners.  With only two exceptions,[19] the

---

[19] There is evidence in the record suggesting that two properties did suffer damage outside of the concrete itself, one involving grass growing in a driveway and problems with landscaping, the other involving unusual wear and tear to a carpet.  At the summary judgment hearing, counsel for Red-D-Mix suggested that these two claims could not be dismissed under the economic loss doctrine.  It was a prudent concession.  See Linden, 283 Wis. 2d 606, ¶6 ("Economic damages" covered by the doctrine "do not include losses due to . . . damage to other property.") (citation omitted).  Because these homeowners' claims are not barred by the economic loss doctrine, and because damages as a general matter are not fatally speculative, see infra ¶55, they should be included in the case that goes to trial.

damages were to the installed concrete itself, and there were no physical injuries or personal harm. In short, the three parties stood in the same position as those discussed in Linden.[20]

¶49 Although the plaintiffs in Linden abandoned their contract claims before their case reached our court, id., ¶31, we nevertheless spoke unequivocally on the subject. In situations like these, we said, "homeowners retain contractual remedies against the general contractors, who in turn have their own remedies against the subcontractors." Id., ¶30. That is to say, contractual claims should be brought between parties in privity of contract. The homeowners and Red-D-Mix were not in privity, and United cannot create a cause of action for its customers where none lies.[21]

¶50 United attempts to distinguish Linden on two principle grounds.[22] Neither is convincing. First, it stresses that

---

[20] United argued to the circuit court that Linden applies only to subcontractors and not suppliers, and that Red-D-Mix can only be characterized as the latter. It does not press that argument here so we do not take it up in detail. Suffice it to say, as we do above, that the parties stand in the same position vis-à-vis one another as did the parties in Linden in all relevant respects.

[21] Both parties grant that if any property owners sue United, it can then bring Red-D-Mix in as a third-party defendant.

[22] In addition to these two points, United maintains that Red-D-Mix conceded the assignments' validity in a prior motion during the litigation over insurance coverage in the case. It provides no citations and scant argument in support. We read the motion simply as arguing, in a largely unrelated proceeding, that the homeowners transferred whatever rights they might have had to sue Red-D-Mix to United, not that they necessarily enjoyed such rights.

32

"privity of contract exists between the opposing parties" here, while it did not in Linden. This is true, but immaterial. The privity of contract between United and Red-D-Mix has nothing to do with the relationship between the homeowners and Red-D-Mix, or the ability of the former to sue Red-D-Mix. If the homeowners cannot file an action against Red-D-Mix, then United cannot do so in their name.

¶51 Lastly, United urges us to accept the claims on the basis that Linden imposed no bar on third-party contract beneficiary actions. We grant that Linden left unsettled the permissibility of such suits. Id., ¶31. That question will remain open, as United did not claim, in its complaint, that it was exercising any rights to sue on behalf of the homeowners as third-party beneficiaries.

¶52 To summarize, Linden precludes United from suing Red-D-Mix in the name of the homeowners. The circuit court properly dismissed those claims on summary judgment, and the court of appeals improperly reinstated them. It is reversed insofar as it did so, and those claims will not go to trial.

2. United's Claims in Its Own Name are Permissible

¶53 The circuit court rejected United's claims brought in its own name on the grounds that damages were too speculative. In the court of appeals' judgment, however, they were sufficiently concrete to justify a trial. We agree with the

33

court of appeals, though we overrule its premature determination regarding the effect of the assignments.[23]

¶54 In order to survive summary judgment, a complaint sounding in contract must allege damages. See, e.g., Black v. St. Bernadette Congregation of Appleton, 121 Wis. 2d 560, 566, 360 N.W.2d 550 (Ct. App. 1984). Such allegations must reflect "[t]he fundamental idea in allowing damages for breach of contract," that is, "to put the plaintiff in as good a position financially as he would have been in but for the breach" by giving the aggrieved party "what he contracts for or its equivalent." Cent. Brown Cnty. Water Auth. v. Consoer,

---

[23] United objects to Red-D-Mix's briefing of this issue on the grounds that it was not presented in the petition for review. Although the word "damages" does not appear in the petition's statement of issues, the question of whether damages are speculative is closely intertwined with the question of whether the action is barred by Linden, which was raised. An examination of our own discussion shows as much, as does inspection of the court of appeals opinion, the briefs, or the arguments to the trial court. In a word, Red-D-Mix has always taken the position that the claims asserted through the assignments are invalid because the property owners cannot sue Red-D-Mix under Linden, and that is one of the reasons why United's own damages (which are in part claimed on behalf of the owners) are speculative. It has taken that position at every stage of litigation and in every court, and it took it in its petition for review. In this sense, the two issues are not only linked, each is part and parcel of the other.

Moreover, even though the petition did not specifically mention damages in its framing of the issue, it did discuss it at some length in the argument section of the petition, putting both United and the court on notice that it was inherent in the issue raised. To refuse to address it would be to adopt a crimped reading of our procedural rules, and would impair the comprehensiveness of our decision and create unnecessary ambiguity on remand.

Townsend, Envirodyne, No. 09-C-0131, 2013 WL 501419, unpublished slip op. at *10 (E.D. Wis. Feb. 11, 2013) (quoting Schubert v. Midwest Broad. Co., 1 Wis. 2d 497, 502, 85 N.W.2d 449 (1957) and DeSombre v. Bickel, 18 Wis. 2d 390, 398, 118 N.W.2d 868 (1963)). A party satisfies its burden at summary judgment with respect to damages if it advances evidence that it did not "receive[] the benefit of its bargain." Id. One way of making this showing is to submit evidence that raises a material question of fact as to whether a product or service provided "was of lesser quality" than guaranteed under the agreement, and whether its defects led the plaintiff to incur "costs needed to repair the alleged defects." Id. As a more general matter, to be recoverable in a contract claim, damages have to "flow[] from the breach." Denhart v. Waukesha Brewing Co., 21 Wis. 2d 583, 595, 124 N.W.2d 664 (1963) (citation omitted), and they "must be reasonably foreseeable at the time the contract was made as a probable result of the breach." Peterson v. Cornerstone Prop. Dev., LLC, 2006 WI App 132, ¶50, 294 Wis. 2d 800, 720 N.W.2d 716 (internal quotation marks and citation omitted).

¶55 The record contains evidence suggesting that flatwork required replacement because of the deterioration in Red-D-Mix's concrete. United has already replaced one driveway, belonging to the Beyers, pursuant to a settlement with the aggrieved

35

party.[24] Another couple, the Michaels, demanded a reservation of rights to sue United in return for executing the assignment, entitling them to hale United into court at any time. Replacing the work done for either the Beyers or the Michaels would not have been necessary if United had procured durable concrete from Red-D-Mix. The latter's failure to supply such concrete breached its contract with United, and the cost of replacement is directly attributable to that failure, i.e., it "flow[s] from the breach." Denhart, 21 Wis. 2d at 595. Furthermore, a competent supplier of concrete knows that if it sells a substandard product, the end-users will likely see their properties marred. Red-D-Mix was aware of that inevitability as well, or should have been, so the damages were "reasonably foreseeable at the time the contract was made as a probable

---

[24] In its initial brief, Red-D-Mix submits that the Beyers should be excluded from the equation because evidence of its case in small claims court was only given to the circuit court presiding over this matter after summary judgment was entered below. However, it concedes that "reference to" the small claims litigation was made prior to that date in circuit court, and that the stipulation and order calling for the replacement preceded the summary judgment hearing. Red-D-Mix does not challenge the veracity of United's representations to the circuit court regarding the Beyers' case, nor the nature of the order. The trial judge was made adequately aware of the case and United's reliance upon it for us to consider it here.

result of the breach."   Peterson, 294 Wis. 2d 800, ¶50.[25] Damages are not speculative.

¶56  One final point.   The above-quoted passage from the court of appeals opinion regarding the assignments creates confusion on the question of damages, in addition to the ambiguity it inserts into the economic loss doctrine.   To repeat the most essential sentence, the court of appeals announced that "[w]hile the homeowners may have had no rights against Red-D-Mix to assign, the Assignments neither strip from United its right to sue Red-D-Mix nor protect United from homeowners' potential breach-of-contract claims."   United Concrete, No. 2011AP1566, ¶11.   In the preceding section we had occasion to comment on the problematic ambiguity of the term "may" in the first sentence. Now, we must overrule the premature statement made in the second.

¶57  As shown above, there was sufficient evidence in the record regarding damages for United to survive summary judgment. The court of appeals did not need to construe the legal significance of the assignments in order to reach its result, let alone to do so with no explanation, no consideration of the

---

[25] Obviously, nothing in this opinion should be taken to limit United, in its showing of damages, to expenses undertaken with respect to the Beyers' and Michaels' properties.   We focus on those properties only because they are sufficient for United to surmount the hurdle of summary judgment.   United is entitled, like all plaintiffs, to prove up to the jury's satisfaction any damages that stem from the breach and which were reasonably foreseeable by Red-D-Mix at the time it contracted to supply the relevant concrete to United.

assignments' terms, and no citation to authority. We overrule its comments on the status of the assignments. If the assignments become relevant in any further proceedings before the circuit court, they can be interpreted afresh at that time.

## V. CONCLUSION

¶58 As shown above, the court of appeals was in the main correct, but reached the wrong result in one respect and was overbroad or imprecise in others. To wit, the court of appeals properly reversed the circuit court's ruling regarding puffery, though it incorrectly determined that puffery is always a question of fact for the jury. On the next issue, the court of appeals erred in its determination that the claims United asserted through the assignments were valid, when, with two exceptions,[26] the economic loss doctrine barred the homeowners from suing Red-D-Mix and thus barred United from suing in their name. Finally, the court of appeals rightly reversed the circuit court for finding all the asserted damages speculative, though in doing so it prematurely interpreted the legal significance of the assignments. Its language construing the assignments is overruled.

¶59 When the case is returned to it, the circuit court is directed to dismiss the claims asserted through the assignments, and to allow the remaining claims to proceed to trial. We affirm in part, reverse in part, and remand with instructions.

---

[26] See supra note 19.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the circuit court with instructions.

¶60 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I agree with the court of appeals' unpublished per curiam opinion in this case. Like the court of appeals, I would reverse the order for summary judgment and remand the matter to the circuit court for trial without any specific instructions.

¶61 I have trouble with the majority opinion's instruction to the circuit court "to dismiss the claims asserted through the assignments, and to allow the remaining claims to proceed to trial." Majority op., ¶¶3, 59. To take a page out of the majority opinion's play on the word "concrete," I suggest that the majority opinion's instruction "to dismiss [United Concrete's] claims asserted though the assignments" is not concrete enough.

¶62 Just what claims does the majority have in mind that have to be dismissed? Why make the circuit court and the parties guess which claims the majority wants dismissed? Just tell us!

¶63 As I read the complaint, which I have attached hereto as Exhibit A, United Concrete has not asserted any claims through the assignments. United Concrete's complaint has seven numbered claims. All the claims United Concrete asserts in the complaint are for injuries United Concrete alleges it has suffered as a result of Red-D-Mix's conduct.

¶64 The circuit court order dismissed United Concrete's entire complaint. The substantive portion of the dismissal order reads as follows:

1

> NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that Red-D-Mix Concrete, Inc.'s motion for summary judgment is granted. The Court rules that <u>all claims asserted</u> by United Concrete & Construction, Inc. <u>through the assignments from the property owners</u> and <u>all tort based claims</u> are precluded by the holding in <u>Linden v. Cascade</u>, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189 and the Economic Loss Doctrine.
>
> IT IS FURTHER ORDERED AND ADJUDGED that, with respect to the Plaintiff's Wis. Stat. § 100.18 claim, the statements made by Red-D-Mix Concrete, Inc.'s salesman constitute "puffery" and are not actionable under the statute.
>
> IT IS FURTHER ORDERED AND ADJUDGED that, with respect to United Concrete & Construction, Inc.'s <u>remaining claims</u>, the Plaintiff has not sufficiently established damages, to support its claims (emphasis added).

¶65 This circuit court order organizes United Concrete's complaint into four categories of claims: (1) claims asserted through the assignments from the property owners; (2) tort based claims; (3) Wis. Stat. § 100.18 claim; and (4) remaining claims. The circuit court order does not make clear which of the seven claims in United Concrete's complaint it viewed as being based on the assignments.

¶66 The reality of this case is that the whole issue of the assignments is, as United Concrete has maintained, a "red herring,"[1] diverting attention from the real issues: Did Red-D-

---

[1] Others have viewed the discussion of the assignments in this case as a "red herring." At oral argument, Justice Roggensack commented about the assignments to Red-D-Mix's counsel during rebuttal as follows:

> Whatever is going on here [with the assignments], to me it feels like a "red herring," what's going on with the homeowners. They're not here. We've got a dispute between Red-D-Mix and United and that's what I think we're gonna focus on here.

2

Mix violate Wis. Stat. § 100.18, did Red-D-Mix breach the contract, and is United Concrete's claim for damages speculative?

¶67 The majority opinion confirms the reality of this case, explaining at ¶41: "The complaint did not explicitly indicate that United was suing Red-D-Mix through the assignments in the homeowners' name."

¶68 While recognizing the reality of this case, the majority opinion sometimes accepts Red-D-Mix's mistaken depiction of the complaint.[2] Indeed, the majority opinion repeatedly vacillates between reality and spin.

¶69 The majority opinion's adoption of Red-D-Mix's mistaken depiction of the complaint rather than the reality of the complaint culminates in the majority opinion's instruction to the circuit court "to dismiss the claims asserted through the assignments, and to allow the remaining claims to proceed to trial."

¶70 I vote for concrete reality. The majority opinion should be precise in telling the circuit court which parts of the complaint it should strike.

---

An audio recording of the oral argument can be found on the Supreme Court's website at http://www.wicourts.gov/opinions/soralarguments.htm, at 1:13:58 – 1:14:15.

[2] See, for example, ¶¶39, 41, 43, 48 of the majority opinion, treating the complaint as if United Concrete's claims for "breach of contract, breach of express warranty, breach of implied warranty, indemnification, and contribution" were "brought both in [United Concrete's] own name and through its assignments from the homeowners."

¶71 I am authorized to state that Justices ANN WALSH BRADLEY and N. PATRICK CROOKS join this opinion.

EXHIBIT A

| STATE OF WISCONSIN | CIRCUIT COURT BRANCH VII | OUTAGAMIE COUNTY |
|---|---|---|

CLERK OF CIRCUIT CO...

UNITED CONCRETE & CONSTRUCTION, INC.,

    Plaintiff,

vs.

                                                    **Case No.: 08-CV-1595**

RED-D MIX CONCRETE, INC.,
NATIONWIDE MUTUAL INSURANCE COMPANY,
and
ALLIED INSURANCE COMPANY,

    Defendants.

JAN 1 3 2011

---

### THIRD AMENDED COMPLAINT

---

The Plaintiff, United Concrete & Construction, Inc., by and through its attorneys, Epiphany Law, LLC, and Valerie J. Revnew of the firm, alleges the following:

1. Plaintiff, United Concrete & Construction, Inc. (hereinafter referred to as "United"), is a corporation duly formed under the laws of the State of Wisconsin with a principal place of business at 5902 N. Richmond Street, Appleton, Wisconsin, 54913.

2. Defendant, Red-D Mix Concrete, Inc. (hereinafter referred to as "Defendant" or "Red-D Mix"), is a Wisconsin corporation with its primary place of business located at 2885 Allied Street, Green Bay, Wisconsin 54304, and Frank Kowalkowski as a registered agent, whose address is the same.

3. Based on information and belief, Defendant, Allied Insurance Company (hereinafter "Allied") is an insurance corporation, with its principal place of business located at 1100 Locus St, Dep. 1100, Des Moines, Iowa 50391 with CT Corporation System as a registered agent at 8040 Excelsior, Suite 200, Madison, Wisconsin 53717. Upon information and belief, and at all times material herein, the defendant, Allied Insurance Company, had issued Red-D Mix Concrete, Inc., a policy that was in full force and effect providing coverage for liability as described herein. Further, upon information and belief, the policy number is ACPGL0710 2253616.

4. Upon information and belief, Nationwide Mutual Insurance Company (hereinafter "Nationwide"), may be Allied's parent company or have a contract with Allied to provide insurance coverage in the state of Wisconsin. Defendant, Nationwide Mutual Insurance Company is an insurance corporation, with its principal place of business located at One Nationwide Plaza, Columbus, Ohio 43215 with CT Corporation System as a registered agent at 8040 Excelsior, Suite 200, Madison, Wisconsin 53717. Nationwide Mutual Insurance Company may be the company responsible for providing commercial liability insurance coverage to Red-D Mix Concrete, Inc under policy number ACPGL0710 2253616.

1

5. United is a concrete contractor that primarily installs driveways, patios, and other concrete flatwork.

6. Red-D Mix manufactures and/or distributes concrete.

7. United used Red-D Mix's concrete during the 2007 season. In the course of its business, United poured flatwork at many residences and businesses during 2007 such that said concrete has been used in many locations in the area.

8. The flatwork performed by United using Red-D Mix's concrete in 2007 has suffered from problems with premature deterioration, including, but not limited to scaling, pitting, discoloration, crumbling and spalling along sawcuts and loss of surface.

9. The problems with premature deterioration were made known to Red-D Mix.

10. United anticipates that in the future it may be subject to claims, demands and suits as a result of said use of said concrete, as alleged above, and to date has incurred expenses to correct said problems all to the detriment of United.

11. Properties attached hereto as Exhibit A have had flatwork poured using the defective concrete from Red-D Mix. The owners of said properties have assigned their rights to sue to United.

## FIRST CLAIM
### (Breach of Contract)

12. Plaintiff reincorporates and realleges paragraphs 1-11 above as if fully set forth herein.

13. In 2007, United entered into a contract with Red-D Mix for non-defective concrete to be used in the installation of driveways, patios, and other concrete work.

14. Red-D Mix breached the contract by delivering concrete that was defective, of unsatisfactory quality, and unsuitable for use in concrete work performed by United.

15. Red-D Mix's defective concrete caused problems including, but not limited to, scaling, pitting, discoloration, crumbling and spalling along sawcuts, and other premature deteriorations and loss of surface in the flatwork performed by United with Red-D Mix's concrete in 2007.

16. As a result of Red-D Mix's breach of contract, United has suffered damages in an amount to be determined at trial.

17. As a result of Red-D Mix's breach of contract, Red-D Mix is liable to United for any and all damages arising out of said breach of contract.

## SECOND CLAIM
### (Breach of Express Warranty)

18. Plaintiff reincorporates and realleges paragraphs 1-17 above as if fully set forth herein.

19. In 2002, United used Red-D Mix as a concrete supplier for its flatwork.

2

20. United stopped using Red-D Mix as a concrete supplier in approximately 2005 due to problems with the concrete mix.

21. A couple of years later, in 2007, United was in the process of changing concrete suppliers.

22. Tim Hippert, of United Concrete, met with Red-D Mix's representative, John, about switching to Red-D Mix concrete.

23. United wanted to make sure the quality issues that it previously experienced with Red-D Mix had been resolved. It was important to United that Red-D Mix's concrete was a good and durable product without defects. Therefore, instead of simply obtaining prices over the phone, Tim Hippert met face-to-face with Red-D Mix to discuss the quality of the concrete.

24. The meeting was attended by Kevin Kluess (a United foreman), Tim Hippert, and Red-D Mix salesman, John.

25. During the meeting, Tim Hippert and Kevin Kluess specifically inquired as to the quality of the concrete available from Red-D Mix. .

26. Red-D Mix, through its representative, assured United that Red-D Mix had built a new plant and would be able to provide United with concrete that would allow United to create a good and durable product for its customers

27. United relied upon Red-D Mix's express affirmations in entering into the contract with Red-D Mix for concrete in 2007.

## THIRD CLAIM
### (Breach of Implied Warranty)

28. Plaintiff reincorporates and realleges paragraphs 1-27 above as if fully set forth herein.

29. Red-D Mix has made implied warranties of merchantability and fitness for a particular purpose, including that the concrete delivered to United would be of satisfactory quality and suitable for use in flatwork performed by United.

30. Red-D Mix breached these implied warranties of merchantability and fitness for a particular purpose by delivering concrete that was defective, of unsatisfactory quality, and unsuitable for use in concrete work performed by United.

31. Red-D Mix's defective concrete caused problems including, but not limited to, scaling, pitting, discoloration, crumbling and spalling along sawcuts, other premature deteriorations and loss of surface in the flatwork performed by United with Red-D Mix's concrete in 2007.

32. As a result of Red-D Mix's breach of contract, United has suffered damages in an amount to be determined at trial.

33. As a result of Red-D Mix's breach of contract, Red-D Mix is liable to United for any and all damages arising out of said breach of contract.

3

## FOURTH CLAIM
### (Unfair Trade Practice: Untrue, Deceptive, or Misleading Representation – Wis. Stat. § 100.18)

34. Plaintiff reincorporates and realleges paragraphs 1-33 above as if fully set forth herein.

35. In selling concrete for use in flatwork, Red-D Mix made representations about the concrete which induced United to purchase concrete from the Red-D Mix.

36. United reasonably relied on the representations from Red-D Mix and the representations were a significant factor that contributed to United's decision to purchase concrete from Red-D Mix.

37. The representations Red-D Mix made about the concrete United purchased were untrue.

38. United has sustained, or will sustain, a monetary loss as a result of the representations made by Red-D Mix.

39. Upon information and belief, these actions constitute a violation of Wis. Stat. §100.18.

## FIFTH CLAIM
### (Negligence)

40. Plaintiff reincorporates and realleges paragraphs 1-39 above as if fully set forth herein.

41. At all times material hereto, Red-D Mix negligently produced and supplied to United said concrete used in the pouring of flatwork and such negligence caused the aforementioned defects and problems occurring with said flatwork, as alleged above, such that Red-D Mix is liable to United for actual and consequential damages arising from said problems and defects, including but not limited to, costs of repair, replacement and remedy of any and all defects, complaints and resulting injuries which have arisen or will arise in the future as a result of the use of said concrete, as alleged above.

42. Red-D Mix did not make all reasonable and adequate tests and inspections of its product to guard against any defective conditions.

43. As a result of the negligence of Red-D Mix, numerous property owners have experienced problems with the flatwork poured by United, including but not limited to, those listed in Exhibit A, attached hereto and incorporated herein by reference.

## SIXTH CLAIM
### (Indemnification)

44. Plaintiff reincorporates and realleges paragraphs 1-43 above as if fully set forth herein.

45. Red-D Mix, in supplying said concrete to United for the purpose of use in flatwork, is liable to United under the theory of indemnification for any and all damages, claims or complaints, past, present and future, arising out of the aforementioned defects in said concrete, as alleged above.

4

## SEVENTH CLAIM
### (Contribution)

46.  Plaintiff reincorporates and realleges paragraphs 1-45 above as if fully set forth herein.

47.  In the alternative, Red-D Mix, as the supplier of the concrete used in the pouring of flatwork, would be liable under the theory of contribution for any and all damages claimed or to be claimed against United, resulting in any way out of the said claims and suits arising out of the use of said concrete, as alleged above.

WHEREFORE, the Plaintiff prays for the following relief:

a)  Damages in an amount that will reasonably compensate United for the aforementioned damages allegedly caused and to be caused by the defective concrete provided by the defendant under the theories alleged herein;

b)  Costs, including attorney's fees; and

c)  Such other further judgment or order of relief as may be considered just and equitable.

Dated this 13th day of January 2011.

Epiphany Law, LLC
Attorneys for United Concrete &
Construction, Inc.

By: _____
Valerie J. Review
State Bar No.: 1045415
A Member of the Firm

Epiphany Law, LLC
4211 N. Lightning Drive
Appleton, WI 54913
Telephone: 920.996.0000
Fax: 920.996.0001

5